*In re* KUHN'S ESTATE.

1. WILLS — TESTAMENTARY TRUSTS — INCOME — PRINCIPAL — REPAY-
MENT.

Under will providing that entire net income of residuary trust be
paid testator's widow for her natural life and giving trustee
power and authority to use such of the principal for her sup-
port as it deemed necessary for her proper maintenance and
support, income collected subsequent to payments by trustee to
widow of sums excessive of income theretofore received *held*,
payable to estate of widow where evidence shows the earlier
payments to have been made without thought of repayment, no
note was taken from the widow, and payments were for proper
maintenance of widow and her daughter, the contingent bene-
ficiary of the trust.

2. SAME — NET INCOME — ACCRUALS UP TO WIDOW BENEFICIARY'S
DEATH.

Under will leaving entire residue in trust to widow pursuant to
expressed wish to protect her ''so far as possible and to safe-
guard her interests so long as she lives'' and directing trustee
''to pay net income'' from the trust to her ''for and during
her natural life,'' and permitting it to use such portion of the
principal as it deemed necessary for her proper support and
maintenance, income accrued up to the time of her death *held*,
payable to her estate notwithstanding payments thereof were
not received until after her death, there being an outright gift
to her of net income not limited by amount necessary for her
proper support and maintenance in the way gift of principal
was restricted.

Appeal from Wayne; Toms (Robert M.), J. Sub-
mitted April 12, 1938. (Docket No. 90, Calendar
No. 40,007.) Decided June 6, 1938.

In the matter of the estate of Franz C. Kuhn,
deceased. Petition by Sidney E. Stephens, executor

of the estate of Mina C. Kuhn, deceased, for an order directing George M. Read, successor trustee, to pay certain sums alleged to be due. From order dismissing petition, petitioner appealed to circuit court. Wilhelmina Kuhn Myron intervened in circuit court. Francis E. Chadwick, guardian *ad litem* for the interests of the incompetent, unborn, unascertained and undetermined interests under will of Franz C. Kuhn, filed an answer to petition in circuit court. Decree for petitioner Stephens. Successor trustee Read and intervener Myron appeal. Affirmed.

*Pear, Campbell, Langs & Tyler,* for petitioner.

*Lightner, Crawford, Sweeny, Dodd & Toohy* (*George D. Haller,* of counsel), for appellants.

BUSHNELL, J. This is an appeal from an order of the circuit court which vacated an order of the probate court and allowed the claim of the executor of the last will and testament of Mina C. Kuhn, deceased widow of the late Mr. Justice Kuhn, against George M. Read, second successor trustee under clause 9 of the will of Justice Kuhn. The allowance was in the sum of $2,076.50, with interest thereon at five per cent. from November 16, 1936, the date of the filing of the petition in the probate court.

The questions raised by the parties may be thus summarized:

1. Were certain moneys paid to Mrs. Kuhn during her lifetime, in excess of net income from the trust, paid "as income" or as distributions of principal?

2. Is the estate of Mrs. Kuhn entitled to the income which accrued to the trust during her lifetime but which was not collected until after her death?

3. Did the language of the will limit the distribution of income to a sum sufficient for the support and maintenance of Mrs. Kuhn or was she entitled to the entire net income of the trust?

Clause 9 of Justice Kuhn's will reads as follows:

"Having full confidence that my wife, Mina C. Kuhn, will fully provide for the care and education of my daughter, Wilhelmina, I am making no provision for my said daughter other than as provided in paragraph eighth hereof and as hereinafter provided. It is my wish to protect my wife so far as possible and to safeguard her interests so long as she lives. I, therefore, give, devise and bequeath all of the rest, residue and remainder of my estate, of whatsoever kind and wheresoever situated to the Union Trust Company, of Detroit, Michigan, in trust, however, I direct said trustee to keep said trust fund invested in good, income-producing securities and to pay the net income therefrom to my said wife for and during her natural life. I give said trustee full power and authority, in its discretion, to use such part of the principal of said trust fund as it may deem necessary for the proper maintenance and support of my said wife and for the proper maintenance, support and education of my said daughter, having in mind the size of my estate. In the event of the death of my said wife before my daughter attains the age of 30 years, then said trust shall continue during the lifetime of my daughter, provided, however, that when she reaches the age of 30 years said trust shall terminate and the trust fund shall then be turned over to my said daughter. In the event of the death of my daughter before reaching the age of 30 years, my wife being dead, or in the event that my daughter shall predecease my wife, then upon my wife's death said trust shall terminate and said trust fund shall be turned over to the lawful issue of my said daughter,

and if she shall have died leaving no issue, then said trust fund shall be turned over to the heirs of my blood.''

According to the testimony of Rudolph E. Hoeflich, vice-president of the Union Guardian Trust Company, successor to Union Trust Company, certain sums were paid to Mrs. Kuhn, for several years, in excess of the net income from the trust during those years. These sums were carried as ''income debit balance'' in the accounts of the trustee rendered to the probate court. We quote the following from the direct testimony of the witness:

''In other words, taking the two portions of the account, principal and income as separate entities, the income account owed the principal account $5,054.06. * * * As I said before, the income account owed the principal account the amount of the balance. Moneys had been paid to Mrs. Kuhn as income when there wasn't sufficient income, and had been paid out of principal. At the time that I took over the management of the trust in 1932, Mrs. Kuhn had received as income some $11,000 over and above the amount of income that was actually received. For purposes of reconciling my account, or for some other purpose, I charged that amount against principal. * * * In the income account we show distribution of $4,200 to the beneficiary, apparently treated as income at that time.''

However, the record does not disclose how these distributions were entered upon the trustee's books at the time they were made.

Upon cross-examination, Hoeflich said:

''I have testified in the probate court on this matter. I recall being asked the question, though I don't remember by whom, as to whether we were exercising our discretion in paying out principal to Mrs.

Kuhn. I recall Judge Murphy saying that the question he wanted to determine was as to whether we were acting within our discretion in paying out principal, or whether we were doing something else, and I replied to him that we were paying out principal in accordance with clause 9 of the will. That is what I say now. I don't believe at any time we did anything other than we were empowered to do under clause 9 of that will. I don't think the thought of repayment was ever present. We never took a note from Mrs. Kuhn for any of these demands. We never had any understanding with her or anybody that the income or the payments which we were making to her were to be repaid. The payments that were made to Mrs. Kuhn also were intended to provide for the proper maintenance, support and education of the daughter, as well as proper maintenance and support of Mrs. Kuhn.''

Defendants assert that this testimony indicates that the ''excess payments'' were made by the corporate trustee ''as income'' and not as distributions of principal; that is, that the trustee intended to make up the deficiency out of later collected income. It is claimed, therefore, that successor trustee Read was entitled to credit certain income subsequently collected by him during Mrs. Kuhn's lifetime against ''income overpayment,'' and that he is not obliged to account for such sums to the estate of Mrs. Kuhn.

The circuit judge declined to accept defendants' view of the facts, and found that Mrs. Kuhn's estate was entitled to this income which was collected by trustee Read. This conclusion is supported by the testimony and should not be disturbed on appeal.

In addition to the income collected by appellant Read, he compounded, with the approval of the probate court, two delinquent mortgages. The proceeds of the compositions were received by Read

after the death of Mrs. Kuhn and he credited the entire amount thereof to the corpus of the trust. The circuit court credited the estate of Mrs. Kuhn with a portion of the avails of these mortgages, computed on the basis of the proportion which the mortgage interest which had accrued at the time of Mrs. Kuhn's death bore to the total amount of principal and accrued interest. Appellants do not question the accuracy or propriety of this method of computation, nor do they challenge the correctness of the presumption that Mrs. Kuhn as the life beneficiary of the testamentary trust was entitled to all of the income which had either accrued or been collected prior to her death. They claim, however, that, as to accrued income, this presumption is overcome by the language of clause 9, and that, therefore, the circuit judge erred in charging defendant Read with this mortgage interest. They point out that the will states that it was Justice Kuhn's wish to protect his wife "so far as possible and to safeguard her interests *so long as she lives,*" and also that it directs the trustee "to pay the net income" from the trust to testator's wife *"for and during her natural life."* They argue from this that any income payments received after her death are not a part of her estate. We believe that the quoted language is merely ordinary terminology used in setting up a life estate and was not intended to be a limitation upon the income belonging to the life beneficiary. See *Detroit Trust Co.* v. *Detroit Trust Co.,* 258 Mich. 386.

Appellants also argue that clause 9, construed as an entirety, indicates that it was the testator's intent that Mrs. Kuhn should receive only such portion of the net income of the trust as might be necessary for her proper maintenance and support. We do not agree with this construction. The gift was of "net

income," which, unlike the gift of principal, was not limited to amounts necessary for support and maintenance.

The order of the circuit court is affirmed, with costs to appellee.

Butzel, Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred.

Wiest, C. J. (*concurring in affirmance*). Under the will Mrs. Kuhn was entitled to all of the net income during her life. Does net income, accrued but uncollected until after her death, pass to her estate? Corpus of the estate was used to provide insufficiency of income. This the will authorized. If the mentioned income had been collected during her life it would have been hers of right and allowances out of the corpus could not have been set against it. What could not have been then done cannot be done now.