SPRINGFIELD SAFE DEPOSIT AND TRUST COMPANY, trustee, *vs.* ELEANOR A. WADE & others.

Hampden.    May 4, 1939. — January 15, 1940.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Trust,* Capital and income.

The trustee under a will was required to apportion, between capital and income, the proceeds of a sale of real estate, unproductive of income, previously purchased by him in foreclosure of a mortgage held by the testator which, productive of income when the trust was established, thereafter became unproductive, and a method of computing the apportionment after the determination by the Probate Court as to the current rate of return on trust investments, one element in such computation, was stated.

PETITION, filed in the Probate Court for the county of Hampden on September 29, 1938.

The case was reserved and reported by *Denison,* J.

*D. M. Macauley,* for Springfield Home for Aged Women and another.

*M. J. Donovan,* for Eleanor A. Wade.

DOLAN, J. This is a petition in equity whereunder the petitioner, as it is trustee under the will of Lillian Trask Williamson, late of Springfield, deceased, seeks instruction as to the proper application of the proceeds of sale of certain real estate acquired by the petitioner by foreclosure

proceedings, and of the sum of $500 received in satisfaction of the mortgagor's liability on the mortgage note. The case was heard upon the pleadings for final determination by the judge, who reserved and reported it, without decision, for the determination of this court.

The allegations of the petition, all of which are admitted in the answers, disclose the following facts: The testatrix died on April 12, 1930. Her will, which was admitted to probate on May 14, 1930, provided in part as follows: "(7) To the Springfield Safe Deposit and Trust Company, a corporation established in said Springfield, the residue of my estate, to hold in trust, manage, invest and pay the net income thereof to my said aunt Eleanor A. Wade so long as she shall live. At her death I devise and bequeath the principal of the trust estate in equal shares to the Springfield Home for Aged Women and the Springfield Home for Aged Men, both corporations established in said Springfield. I authorize and empower said trustee, its successor or successors in said trust to sell and convey, at public auction or private sale, any real estate which may form a part of the trust estate and no purchaser from it or them shall be bound to see to the application of the proceeds of such sale or conveyance."

The trust fund administered by the petitioner "consists of cash, deposits in savings banks, stocks, bonds and real estate mortgages with an inventory value of approximately $36,300." "Included among the assets of said trust fund held by . . . [the] petitioner was the demand promissory note of Fred D. Griggs to Lillian Trask Williamson [the testatrix] for $2,800 dated November 22, 1928, with interest at the rate of six per cent per annum payable semi-annually and secured by a mortgage of even date given by said Griggs covering real estate at number 92 Barber Street, Springfield, Massachusetts, together with guaranty note of Arthur Vega dated May 27, 1930." "Interest payments made on said mortgage note and various irregular payments made on account of interest and applied thereon paid the interest due on said note up to December 22, 1931, from and after which date interest is now due on said note. By reason of

said default said mortgage was foreclosed and said real estate sold at foreclosure sale on May 9, 1933. At the sale . . . [the] petitioner bid in the property for $1,000, there being no other bids. At the date of the foreclosure sale the principal due on said mortgage note was $2,800, expenses paid in connection with the foreclosure sale were $81.20 and the interest due on said mortgage note was $231.93." "Since the acquisition of said property by . . . [the] petitioner the rents therefrom have been insufficient to pay the carrying charges and the petitioner has paid out of the principal of the trust, in addition to the foreclosure expenses of $81.20 mentioned above, $174.37 for water, repairs, taxes and insurance on said property, or a total of $255.57, on account of such carrying charges. No income has been paid to the life tenant, Eleanor A. Wade, on account of said mortgage or real estate since April 4, 1933." "On April 9, 1938, . . . [the] petitioner sold said real estate and received therefor net proceeds of $2,395.05 and since that time has received $500 in settlement of the liability of said Fred D. Griggs on said mortgage note resulting in an aggregate of $2,895.05. In the opinion of . . . [the] petitioner the guaranty note of Arthur Vega is uncollectible."

Since the investment in the note secured by the mortgage became unproductive after the death of the testatrix, and thereafter the mortgage was foreclosed and the real estate bought in by the petitioner, and the investment in this latter form was likewise unproductive, and there is nothing in the will of the testatrix to show that she anticipated these events, the expenses of foreclosure and the carrying charges in excess of the income from the real estate were properly paid out of principal, and it became the duty of the trustee to sell the real estate "as soon as a fair sale . . . [could] be had." *Harvard Trust Co.* v. *Duke*, 304 Mass. 414, 418, and cases cited. Am. Law Inst. Restatement: Trusts, § 240. In the case just cited it is said at page 419: "Questions of apportionment of the proceeds which may arise when . . . [the] property is sold are not now before us." In that case the real estate was owned by the testator at the time of his death, and was then productive but during the

administration of the trust created by his will became unproductive.

By the great weight of authority it is held that where the property is not unproductive at the time of the establishment of the trust, but becomes unproductive thereafter, it is the duty of the trustee to sell it as soon as a fair sale can be made, and that, in the absence of manifestation of intent on the part of the testator or settlor that the property be retained even if it becomes unproductive, or the beneficiary receives no income in respect to it, or only such income as should thereafter accrue from investment of proceeds of the sale, an apportionment of the proceeds of the sale should be made between capital and income. This rule has been held applicable in like circumstances to the proceeds of sale of land acquired by foreclosure, in connection with an investment owned by the testator at his death, but which becomes unproductive after the establishment of the trust created by him and while held by the trustees thereunder. *Matter of Chapal*, 269 N. Y. 464. *Matter of Otis*, 276 N. Y. 101. *Hudson County National Bank* v. *Woodruff*, 122 N. J. Eq. 444, modified 123 N. J. Eq. 585. *Nirdlinger's Estate*, 327 Penn. St. 171, 173; *S. C.* 331 Penn. St. 135. Am. Law Inst. Restatement: Trusts, § 241. Scott on Trusts, § 241.3. See also *Wallace* v. *Wallace*, 90 S. C. 61, 77, 78.

We think there is nothing in the cases upon which the remaindermen largely rely, such as *Jordan* v. *Jordan*, 192 Mass. 337, *Parkhurst* v. *Ginn*, 228 Mass. 159, and *Creed* v. *Connelly*, 272 Mass. 241, in conflict with the view we take — that in the present case an apportionment of the proceeds of sale should be made between capital and income. Those cases are distinguished in *Harvard Trust Co.* v. *Duke*, 304 Mass. 414, at pages 417–418, for reasons which apply in the present case. There is a full discussion of this subject with citation of cases in Scott on Trusts, §§ 233.4, 240, 241.2, 241.3. See also Am. Law Inst. Restatement: Trusts, § 241, comment b.

The question remains as to the proper method of apportionment. In jurisdictions where apportionment has been

allowed, different methods have been adopted, but we are of opinion that the method adopted by the American Law Institute in its Restatement of Trusts is the most equitable one as between life beneficiaries and remaindermen and that we should follow it in the present case. The method set forth in § 241 is as follows: "(2) The net proceeds received from the sale of the property are apportioned by ascertaining the sum which with interest thereon at the current rate of return on trust investments from the day when the duty to sell arose to the day of the sale would equal the net proceeds; and the sum so ascertained is to be treated as principal, and the residue of the net proceeds as income. (3) The net proceeds are determined by adding to the net sale price the net income received or deducting therefrom the net loss incurred in carrying the property prior to the sale." A formula for the computation is set forth in § 241, comment e.

The current rate of return on trust investments is to be found by the judge of probate. See *Parsons* v. *Winslow*, 16 Mass. 361; *Edwards* v. *Edwards*, 183 Mass. 581, 585; *Loring* v. *Thompson*, 184 Mass. 103, 105, 106; *Attorney General* v. *Lowell*, 246 Mass. 312, 324; *Nirdlinger's Estate*, 327 Penn. St. 171, 175. We do not adopt the contention of the life beneficiary that the rate of interest to be used in making the computation for apportionment should be at the mortgage rate.

One of the allegations of the bill is that interest was paid on the mortgage note to December 22, 1931, and that from and after that date no interest was paid on the note, but it is also alleged that no income has been paid to the beneficiary "on account of said mortgage or real estate since April 4, 1933." The inference is that between the dates just referred to there was some net return from the real estate which was paid to the beneficiary. If this be so we think that any net return was properly paid to her. *Nirdlinger's Estate*, 331 Penn. St. 135, 141. *Matter of Otis*, 276 N. Y. 101. We are of opinion, however, that, since the period to be considered in making the apportionment starts at the time the duty of the trustee to sell arose, that is when

the default on the mortgage occurred, which antedates the receipt of any net return from the real estate by the beneficiary, such sums as she received between December 22, 1931, and the date of sale of the property should be deducted from the sum she would otherwise receive, and should be retained in the principal account. Am. Law Inst. Restatement: Trusts, § 241, comment d. Further proceedings in the Probate Court will be necessary to find the amounts so received.

A decree is to be entered instructing the petitioner that the net proceeds of the sale of the real estate involved, together with the sum of $500 received in satisfaction of the mortgagor's liability on the mortgage note, are to be apportioned between capital and income, after such proceedings as may be necessary to determine and incorporate in the decree the precise amount apportionable to income and that to be retained as principal. Costs and expenses of the proceedings may be allowed out of the principal of the trust estate in the discretion of the Probate Court.

*Ordered accordingly.*