## PLUNKETT v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3635.

Circuit Court of Appeals, First Circuit.

April 2, 1941.

Bennett Sanderson, of Boston, Mass. (Harold E. Magnuson, and Hale, Sanderson, Byrnes & Morton, all of Boston, Mass., on the brief), for petitioner for review.

Lee A. Jackson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, and Newton K. Fox, Sp. Assts. to Atty Gen., on the brief), for Commissioner.

Before MAGRUDER and MAHONEY, Circuit Judges, and SWEENEY, District Judge.

MAHONEY, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals determining a deficiency in the sum of $13,890.93 in the petitioner's income tax for the year 1934, under Sections 161 and 162 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 725, and a deficiency in penalty imposed by Section 291 of said Act, 26 U.S.C.A. Int. Rev.Acts, page 750, in the sum of $3,472.73.

The petitioner is the life beneficiary of a testamentary trust, which originally consisted, besides other property, of shares of the capital stock of the Berkshire Cotton Manufacturing Company, of Adams, Massachusetts, and shares of the Greylock Mills of North Adams, Massachusetts, appraised by the Probate Court at $547,500. Under the terms of the trust, the Old Colony Trust Company, Trustee, was directed to keep the stock as a permanent investment, and it was authorized, if in its judgment it was deemed advisable, to invest and reinvest the same, but only in sound securities with a low rate of interest. The income was payable to the petitioner for his life. In violation of its trust, the trustee exchanged these shares for shares of Berkshire Fine Spinning Associates, Inc. No dividends were paid on the common stock of Berkshire Fine Spinning Associates, Inc. after March 1, 1930, and no dividends were paid on the preferred stock after September 1, 1930.

In January, 1932, the petitioner objected to the allowance of the trustee's ninth, tenth and eleventh accounts, which had been filed in the Probate Court of Berkshire County, particularly with respect to the investment in shares of the Berkshire Fine Spinning Associates, Inc. It was ordered by the Probate Court that this item be disallowed and in place thereof the accountant was ordered to insert the item "Cash $547,500", and as so amended the account was allowed. The trustee appealed from this decree to the Supreme Judicial Court of Massachusetts. Later this appeal was withdrawn and an agreement filed in the said court. Under the terms of the agreement the trustee replaced $500,000 cash in the trust in substitution for the preferred and common stock of the Berkshire Fine Spinning Associates, Inc., and resigned as trustee. Later the Agricultural National Bank of Boston, Massachusetts, was appointed trustee and received from its predecessor the assets of the trust including the $500,000 cash.

On October 9, 1934, the petitioner filed a petition with the Probate Court for Berkshire County, in which he made reference to the $500,000 which had been received from the Old Colony Trust Company, Trustee, and listed in its last account as principal, stating that the "moneys so included in said account are principal in part only and also include income or money in lieu of income". He prayed the court to authorize the present trustee to withdraw from the said $500,000 the amount which would have accrued as income had the trust property been properly invested "during the four years and seven months last past" and to allocate the said amount to income in order that it might be paid forthwith to the petitioner as life tenant of the trust fund. On the same day the court ordered the trustee to allocate the sum of $70,000 to income from the $500,000 so accounted for and to pay it forthwith to the petitioner as life

tenant of the trust. Accordingly, the trustee paid to the petitioner $66,000 in 1934 and the balance of $4000 in 1935. Under the order of the Probate Court, the petitioner had the right to receive the $70,000 forthwith, and no question is now raised about the fact that a part of it was paid in 1934 and the balance in 1935.

The Agricultural National Bank, trustee, filed fiduciary and individual returns for the year 1934, in which the $500,000 cash item was treated as a net capital gain transaction. Thus, the difference between the $500,000 returned to the trust and the value of the securities at the date of the death of the settlor, was taxed as a long term capital gain under Section 117 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Acts, page 707, and not as ordinary income. Accordingly, no deduction of any part of the $70,000 was made by the trustee on the returns as income distributable to the petitioner. These returns for 1934 reported income distributable to the petitioner of $2,805.53, representing the balance of net income of the trust, and $286.11 interest received from state and federal obligations exempt from income tax. The entire returns for the trust reported a net loss and thus no tax liability.

On examination of the returns, the respondent, the Commissioner of Internal Revenue, determined that certain readjustments should be made in the returns so that a net taxable income resulted. A deficiency tax was assessed which the trustee paid. In the readjustment, the respondent did not make any deduction of any part of the $70,000 distributed to the petitioner.

The petitioner's return for 1934 was upon a cash receipts and disbursements basis. He reported among other items the income shown on the books of account of the trustee as distributable, namely $2,805.53. He did not report as income the receipt of the $70,000 paid by order of the Probate Court. He placed this return in an envelope addressed to the Collector of Internal Revenue at Boston and mailed it from Adams, Massachusetts, on Friday, March 15, 1935, and enclosed his check for the tax stated in his return, namely, $40.19. Through inadvertence the return was not signed by the petitioner or verified. It was noted as received by the Collector at Boston on Monday, March 18, 1935.

In July, 1935, the Collector wrote asking the petitioner why his return was delinquent. The petitioner answered that he was positive that his return was filed or rather in the mail as required by the Revenue Act of 1934, and any delinquency in filing his return was not due to any wilful intent to avoid compliance with the Revenue Act and was not intentional. Nothing was stated by the Collector which would indicate to the petitioner that his return had been unsigned and unverified.

On April 21, 1936, the amount of tax paid by the petitioner together with interest was refunded because he had reported an excess tax liability due to the fact that he had included as taxable income salary received as a state senator. Still the petitioner was given no notice that his return was deficient for lack of signature or verification.

On March 5, 1938, after an examination of the petitioner's return for 1934 and a conference thereon, the respondent advised the trustee of the reversal of his prior readjustment of the latter's returns and suggested that the trustee file a claim for refund for the tax paid. Simply to protect its rights, the trustee did so. The respondent has withheld action on the claim pending the outcome of the present proceedings.

On March 5, 1938, the Commissioner sent out the deficiency notice involved in this cause, and also gave notice of a 25 percent penalty for failure to file within the time prescribed by law a return properly signed and verified. The petition to review this determination of the Commissioner was filed with the Board on June 1, 1938, and, on advice of counsel, the petitioner filed a signed and verified return for 1934 on October 10, 1938.

The Board of Tax Appeals held that the $70,000 was taxable income of the petitioner for the year 1934, and approved the imposition of the 25 percent penalty for delinquency in failing to file a proper return. The petitioner has appealed.

The first question before us is whether the petitioner is liable to income tax upon the $70,000 which the Probate Court ordered the trustee to pay to the petitioner, as life beneficiary, out of the $500,000 returned to the trust fund after the former trustee's breach of trust.

The applicable sections of the Revenue Act of 1934, 48 Stat. 680, 727, 26 U.S.C.A. Int.Rev.Acts, page 659 et seq., applying to trusts are as follows:

"§ 161. Imposition of Tax

"(a) Application of Tax. The taxes imposed by this title upon individuals shall

apply to the income of estates or of any kind of property held in trust * * *."

"§ 162. Net Income

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that— * * *

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, * * * *but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. * * * *" (Italics supplied.)

The nature and extent of the beneficiary's interest in the trust are determined by the state law and the decision of a competent state court is conclusive as to the validity of such interest. Blair v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465. The right of the beneficiary to the income of the trust is a property right, the extent of which is to be determined by the state court. Freuler v. Helvering, 1934, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Commissioner of Internal Revenue v. Dean, 10 Cir., 1939, 102 F.2d 699. Interest and rights in property are created by state law and the federal revenue acts determine whether such rights are taxable. Morgan v. Commissioner, 1940, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585. Cf. Lang v. Commissioner, 1938, 304 U.S. 264, 267, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319; Uterhart v. United States, 1916, 240 U.S. 598, 603, 36 S.Ct. 417, 60 L.Ed. 819. It is thus incumbent upon us to determine what the property rights of the petitioner were under state law.

The original trustee mismanaged the trust estate in exchanging the stock of the Berkshire Cotton Manufacturing Company and of the Greylock Mills for stock of the Berkshire Fine Spinning Associates, Inc. The latter stock was not the kind in which the trustee was authorized to invest under the terms of the will, and the action of the trustee in so exchanging these stocks was a breach of trust on its part. This deprived the petitioner of the income from the trust. The Probate Court, which had jurisdiction of the estate, determined that such action on the part of the trustee was a breach of trust and ordered restitution.

The $500,000 replaced in the trust was a sum agreed upon for the breach of trust. Under the Massachusetts law, it thereupon became proper for the court to apportion this sum between income and principal so as to determine what portion would have been payable to the petitioner as income had the breach of trust not occurred, and what portion of the sum should remain as principal. Springfield Safe Deposit & Trust Co. v. Wade, 1940, 305 Mass. 36, 24 N.E.2d 764; Edwards v. Edwards, 1903, 183 Mass. 581, 67 N.E. 658; Westcott v. Nickerson, 1876, 120 Mass. 410; cf. Parker v. Winslow, 1820, 16 Mass. 361; Restatement, Trusts, 1935, § 241.

Under the terms of the testamentary trust, the income was payable to the petitioner during his natural life. There was no provision for the payment of any part of the principal to him. But he was entitled to the entire income from the trust fund properly invested. Had the former trustee retained the shares of the Berkshire Cotton Manufacturing Company and the Greylock Mills it would have been accountable to the petitioner only for the income actually earned. If, on the reorganization of those companies, the former trustee had acted properly and invested the proceeds of these securities in sound securities with a low rate of interest, as allowed by the terms of the will, the petitioner would have been entitled to the actual income earned thereon. However, the former trustee improperly invested in what were not considered by the Probate Court to be such sound securities. The Probate Court ordered it to replace these securities with the sum of $547,500, later changed by agreement to $500,000.

It is obvious that a part of this sum consisted of income for which the former trustee was accountable to the petitioner during the period in which the trust funds were improperly invested. The petition of the petitioner to the Probate Court asking for the apportionment recognized this by stating that "said moneys [the $500,000] so included in said account are principal in part only and also include income or money in lieu of income" and by asking the court to order paid to him as life tenant of the trust "the amount which would have accrued as income during the four years and seven months last past". The Probate Court ordered the payment of $70,000 to the petitioner "it appearing to the Court that the allegations in said petition are true

and that the sum of seventy thousand (70,-000) dollars now included as principal of said trust fund is in fact income". Cf. Springfield Safe Deposit & Trust Co. v. Wade, supra; Edwards v. Edwards, supra; Westcott v. Nickerson, supra. The $70,000 was paid to the petitioner, as he requested, as the income which would have accrued to him if the trust funds had been properly invested. Since it was distributed to him as income, he cannot escape taxation on it by showing that the fund as invested earned no income. Letts v. Commissioner of Internal Revenue, 9 Cir., 1936, 84 F.2d 760; Abell v. Tait, 4 Cir., 1929, 30 F.2d 54; Baltzell v. Mitchell, 1 Cir., 1925, 3 F.2d 428.

Since the $70,000 was requested by and paid to the petitioner as income, the only thing he was entitled to under the trust, he cannot be heard now to say that it was not income in order to avoid taxation. The $70,000 was distributed by the trustee to the petitioner as income and was properly included in computing his net income as provided in Section 162(b), supra.

As already set forth, by the terms of the will the petitioner's interest was limited to income from the trust estate. The $70,000 was paid to him as income, the income from the bequest of the trust property which the testator had left to the trustee. To that exent only was he a beneficiary, and the money was paid to him pursuant to the terms of the will as income from the trust. Clearly the payment was not a bequest, devise or inheritance, and the case of Lyeth v. Hoey, 1938, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410, and other cases cited by the petitioner are not applicable.

The final question is whether the Board of Tax Appeals was correct in sustaining the 25 percent delinquency penalty which was imposed by the respondent for failure to file within the time prescribed by law a properly signed and verified return.

The question as to the correctness of the assessment of this penalty has been much obscured by the recital of the actions of the Collector and the respondent after the petitioner mailed his purported return on Friday, March 15, 1935, and the reliance on these actions by the petitioner as in some manner excusing him for not filing a proper return on time. We need not consider whether the mailing of the purported return on Friday, March 15, 1935, would constitute a proper filing of the return under Section 53(a) (1)[1] of the Revenue Act of 1934, supra, 26 U.S.C.A. Int.Rev.Acts, page 683, and Regulations 86 promulgated thereunder. Even if such mailing would constitute a proper filing, the purported return was not "the return required" by Section 51 of the same statute, 26 U.S.C.A. Int.Rev.Acts, page 682, since it was neither signed nor verified. Cf. Lucas v. Pilliod Lumber Co., 1930, 281 U.S. 245, 50 S.Ct. 297, 74 L.Ed. 829, 67 A.L.R. 1350; Uhl Estate Co. v. Commissioner of Internal Revenue, 9 Cir., 1940, 116 F.2d 403. Thus, a proper return was not filed within the time required by the statute.

Section 291 of the Revenue Act of 1934 provides:

"In case of any failure to make and file a return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, 25 per centum of the tax shall be added to the tax, except that when a return is filed after such time and it is shown that the failure to file it was due to reasonable cause and not due to willful neglect no such addition shall be made to the tax. * * *"

We have seen that the "return required by this title" was not filed within the time prescribed by law or by the Commissioner in pursuance of law. If no such return was ever made the 25 percent penalty is mandatory. Noteman v. Welch, 1 Cir., 1939, 108 F.2d 206, 215; Helvering v. Boekman, 2 Cir., 1939, 107 F.2d 388, 389, 390. If such return was filed after the time prescribed by law the penalty is mandatory unless it is shown "that the failure to file it was due to reasonable cause and not due to willful neglect". Sabatini v. Commissioner of Internal Revenue, 2 Cir., 1938, 98 F.2d 753, 756. In this case it can make no difference since even if the properly executed return filed October 10, 1938, can be considered as a proper return filed after the time required by law, the petitioner made absolutely no showing that the failure to file a properly executed return within the time required by law was due to reasonable cause.

[1] "§ 53. Time and Place for Filing Returns

"(a) Time for Filing—

"(1) General rule. Returns made on the basis of the calendar year shall be made on or before the 15th day of March following the close of the calendar year. * * * *"

The petitioner apparently maintains several positions. He seems to feel that by returning to him the tax paid under the purported return mailed on March 15, 1935, on the ground that he had erroneously reported exempt income, the Collector waived the flaws in the return and treated it as though it were a proper return timely filed. Assuming but not deciding that the purported return was mailed in time to constitute filing, no officers of the United States had power to waive the defects in the return. Lucas v. Pilliod Lumber Co., supra. Thus, the purported return mailed on March 15, 1935, could not be considered the proper return.

Nor do we believe that the return of October 10, 1938, can be considered a proper, though tardy, return. It was filed long after this suit was commenced. If such a practice were permitted, a taxpayer could file no return, and then, if such failure were detected and suit brought, he could file a properly executed return, and, by showing reasonable cause for not filing it *before the proper date,* avoid any penalty. Such a construction would put a premium on evasion, particularly where a taxpayer had reasonable cause for failing to file on time. Cf. Taylor Securities, Inc., 1939, 40 B.T.A. 696, 703, 704.

Even if the return filed on October 10, 1938, be considered a proper return for 1934 filed after the time required by law, the penalty must still be imposed on the entire deficiency. The petitioner presented absolutely no evidence why the return mailed on March 15, 1935, was not properly executed. He, therefore, did not bear the burden of showing that his failure to file a proper return in the time required by law was due to reasonable cause. Cf. Berlin v. Commissioner of Internal Revenue, 2 Cir., 1932, 59 F.2d 996, certiorari denied, 1932, 287 U.S. 642, 53 S. Ct. 90, 77 L.Ed. 555. That the failure was due to inadvertence does not relieve the petitioner from the imposition of the penalty. The penalty is not primarily punitive in nature, but is an attempt to protect the revenue. See, Helvering v. Mitchell, 1938, 303 U.S. 391, 401, 58 S.Ct. 630, 82 L.Ed. 917. In order to escape the penalty, the petitioner must show reasonable cause for his failure to file a proper return; inadvertence is not sufficient.

However, the petitioner claims that the government officials misled him by not informing him that his return was improperly executed, and by making him believe his return was acceptable by remitting his tax, on the ground that his return showed no taxable income, thus causing him not to file a properly executed return long before he did. It is not clear whether the petitioner feels that these actions by the taxing officials provide the reasonable cause for failure to file the proper return on time or whether it is his contention that if he had filed a properly executed return sometime after March 15, 1935, the penalty would have attached only to the income reported in that return and not to the subsequently determined deficiency here in suit. Neither position is tenable.

As to the first suggestion, what must be shown is reasonable cause why a properly executed return was not filed *on or before March 15, 1935.* If no reasonable cause is shown why the proper return was not filed on or before that date the penalty must be imposed, regardless of how many good reasons there may be why it was not filed soon after that date. Once that date has passed with no reasonable cause being shown why a proper return was not then filed, it matters not at all how soon or how late the return is filed. Thereafter the penalty will apply regardless.

The only other possible ground for avoiding the penalty is the argument that if the petitioner had earlier filed a properly executed return for 1934 the penalty would have applied only to the tax reported as due in that return and not to the subsequently determined deficiency. Apparently, the return filed October 10, 1938, showed no tax owing. Thus, if the petitioner is right, there can be no penalty since the argument is that it cannot attach to the subsequent deficiency. Cf. Robert Hughes & Co. v. Commissioner of Internal Revenue, 8 Cir., 1940, 109 F.2d 720.

It is true that if a properly executed return be filed within the time prescribed by law, though it be incorrect as to the amount of taxable income, there can be no penalty for failure to file a return under Section 291 of the Revenue Act of 1934. When a deficiency is assessed, no penalties can be imposed unless any part of the deficiency is due to negligence or fraud, as provided in Section 293 of the statute, 26 U.S.C.A. Int.Rev.Acts, page 751. In other words, a taxpayer who filed a properly executed return within the time prescribed by law will not be penalized if the tax shown by the return as owing is incor-

rect unless he is guilty of negligence or fraud. His return is proper, even though incorrect; he need not be correct at his peril.

The situation of a taxpayer who does not file a properly executed return within the time prescribed by law is not as favorable. Section 291 provides that in that situation "25 per centum of *the tax* shall be added to *the tax*". (Italics supplied.) In the absence of any language showing that the words "the tax" mean the tax reported in a return filed after the time prescribed by law, the section must be construed as meaning the *correct* tax. American Milk Products Corporation v. United States, Ct.Cl. 1930, 41 F.2d 966. This is the only practical construction. Any other would open the door to fraud and evasion of the penalty.

Thus a taxpayer who fails to file a properly executed return within the time prescribed by law is penalized 25 percent of the correct tax ultimately found owing. He has no right to file a tardy properly executed return incorrect as to amount and take the penalty only upon the tax reported due therein. So even if the taxing officials did mislead the petitioner into failing to file sooner the properly executed return finally filed on October 10, 1938, it did not harm the petitioner. Since he had no reasonable cause for his original failure to file a properly executed return on time, he was liable to a penalty of 25 percent on the correct tax ultimately found to be due.

The deficiency was properly determined and the penalty correctly imposed.

The decision of the Board of Tax Appeals is affirmed.