FREDERICK J. McKECHNIE & another, trustees, *vs.* CITY OF SPRINGFIELD & others.

Hampden.    May 15, 1941. — April 6, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Trust*, Capital and income.    *Capital and Income.*

Apportionment, as between income and principal, of the proceeds of a sale by a trustee under a will of land which he had held as the result of foreclosure of a mortgage that had been productive but became unproductive during the life of the one entitled to the income for life, was not barred merely because the sale occurred after the death of the life beneficiary.

Under a will which directed that, after the death of an individual entitled to income for life, there should be payment of the income in perpetuity to certain charities and a city, the trustee, upon selling after the death of the individual life beneficiary land that he had held as the result of foreclosure of a mortgage which during that beneficiary's life had become unproductive to his loss, and accepting as proceeds of the sale a small proportion of cash and a participation in a purchase-money mortgage, not shown to be a valid trust investment, was directed not to make an immediate apportionment of such proceeds between principal and income nor to set apart any part thereof for the benefit of the personal representative of the individual life beneficiary, but to hold the proceeds in the principal account until the salvage operation should be completed.

PETITION, filed in the Probate Court for the county of Hampden on May 24, 1940, for the allowance of a trustees' account.

The case was heard by *Denison*, J.

*J. M. Carroll*, City Solicitor, for the city of Springfield.

*V. V. R. Booth*, for The Merchants National Bank of Boston, executor.

Dolan, J.  This is an appeal from a decree entered in the Probate Court allowing, with certain modifications, the twenty-ninth account of the trustees under the will of Edward M. Walker, late of Springfield, deceased.

The case was heard by the judge upon a case stated which disclosed the following facts: The testator died testate on October 2, 1905.  Under the terms of his will, which was duly admitted to probate, he gave the residue of his estate in trust to pay the net income to his brother, William B. Walker, at such times as he might desire during his natural life, and after his death to pay the net income to the testator's cousin, Katherine E. Richardson, on the same terms, and after her death to pay one third of the net income annually to the Springfield Hospital for charitable uses, one third annually to the City Library Association for certain charitable uses, and one third annually to the city of Springfield to be used for the extension, development and ornamentation of Forest Park in that city, under the direction of the board of park commissioners.

William B. Walker died on June 23, 1911, and Katherine E. Richardson died on April 4, 1939.  Among the assets of the trust on April 1, 1934, was a participation in a promissory note of Urbano Giuliani.  The note was for $4,800, bore interest at five and one half per cent per annum, payable quarterly, and was secured by a mortgage of certain real estate located in Springfield.  The interest of the trust in the note was $4,037.76.  No interest was paid thereon after April 1, 1934, and the mortgage was foreclosed on April 5, 1935, and thereafter the trustees had a fractional interest in the real estate itself.

The real estate was sold on May 17, 1939, for $3,400 and the accountants received a participation of $2,566.45 in a new mortgage note (covering the same premises) and $342.21 in cash.  After deducting the proportionate amount of the expenses of foreclosure and crediting the proportionate amount of receipts from the operation of the real estate, the net proceeds of the sale received by the accountants were $1,945.66.

In the account as filed the accountants credited $9.13 to

income as an apportionment between principal and income, being for the period from April 4, 1939, the date of death of Katherine E. Richardson, to May 17, 1939, the date of the sale, and paid that sum in equal shares to the present beneficiaries. "An apportionment of said net proceeds for the period from April 1, 1934, to May 17, 1939, in accordance with the formula adopted in the case of *Springfield Safe Deposit & Trust Co.* v. *Wade*, 305 Mass. 36, would result in the sum of $1,614.45 being allocated to principal and the sum of $331.21 being allocated to income. An apportionment of . . . [the latter sum] between the period from April 1, 1934, to April 4, 1939, and the period from April 4, 1939, to May 17, 1939, would result in the sum of $323.60 being allocated to the prior period and $7.61 to the latter period. If the cash received on said sale is first to be applied to reimburse the principal of the trust for said expenses of foreclosure and maintenance, in order to pay the estate of the deceased life . . . [beneficiary] said sum of $323.60 it will be necessary either to use other principal cash or to assign to her estate an interest in said new note and mortgage."

An examination of the account, which is set forth in the record, discloses that among the investments of the trust are many notes secured by mortgages of real estate or by participations therein, and that in some instances the mortgages have been foreclosed and the interest of the trusts reduced to interests in the real estate itself. A "Real Estate Memorandum" set forth in the account shows foreclosed real estate or interests therein held by the trust (six parcels) at a total value of $132,561.38. The principal of the trust estate is carried in schedule C of the account at a value (as amended) of $699,329.46. The account before us covers the period from November 29, 1939, to April 15, 1940. The income from the trust estate during that period was approximately $12,000.

The parties set forth in a stipulation the changes required to be made in the schedules of the account if there should be an apportionment of the proceeds of the sale of the real estate between the estate of Katherine E. Richardson and

the present beneficiaries. The judge thereafter entered a
decree directing that those changes be made and allowed the
account as thus modified, with the result that the account-
ants were charged in schedule E with an additional amount
of income, less commissions, of $300.95, payable to the estate
of Katherine E. Richardson by way of an apportionment
of the proceeds of the sale of the real estate involved. The
respondent city of Springfield appealed from the decree and
now urges that the estate of Miss Richardson is not entitled
to any part of the proceeds of the sale.

In support of its position the respondent city argues,
upon the authority of *Ogden* v. *Allen*, 225 Mass. 595, that
since the real estate in question was not sold during the
lifetime of Miss Richardson an apportionment should not
be made, and further contends that sound administration
does not permit of such action in a case such as this, where
the trust now runs in perpetuity and a long period of time
may elapse before other unproductive real estate acquired
by foreclosure in the lifetime of Katherine E. Richardson,
and which is still held by the trust, may be disposed of
under existing conditions, possibly for more than twenty
years, with the result that the life beneficiary's estate would
have to be kept open indefinitely, and the interests of the
present beneficiaries would be undetermined over a corre-
sponding period of time. On the other hand, the executor
of the will of Miss Richardson argues in substance that the
case of *Ogden* v. *Allen*, 225 Mass. 595 (to which we have
already referred), should not control the present case, and
that to allow the apportionment in accordance with the
decree entered by the judge is a logical development of
*Springfield Safe Deposit & Trust Co.* v. *Wade*, 305 Mass.
36, and in accord with the view taken by judicial decisions
in other jurisdictions and that taken by other authorities
in the field.

The first question that arises is whether an apportion-
ment of the proceeds of the sale in question should be made
since the sale was made after the death of Miss Richardson.
In *Ogden* v. *Allen*, 225 Mass. 595, the real estate involved,
together with other properties, was devised in trust by the

will of the testator. It was unproductive when he died, as were other parcels so devised by him, and continued to be unproductive up to the time of its sale after the death of the life beneficiary. The income from the trust estate had not at any time during her life equalled the amount of income to which she was entitled during her life. During her lifetime sales of other unproductive real estate had been made and the proceeds apportioned between principal and income. As to the parcel sold after her death the court held that an apportionment ought not to be made, since the fund did not come into existence until after the death of the life benefici- ary, and until all her rights under the trust had ceased, and that at "the time when the fund was created, she had no beneficial interest in the trust."

It is to be observed that the *Ogden* case is distinguishable from *Springfield Safe Deposit & Trust Co.* v. *Wade*, 305 Mass. 36, in the respect that in the former case the land in question was unproductive when the testator died, whereas in the latter case the investment involved, a mortgage, was not then unproductive, but became unproductive thereafter and was sold, and apportionment was decreed. The *Ogden* case is also distinguishable from the *Springfield Safe Deposit & Trust Company* case because in the former case the sale was made after the death of the life beneficiary, whereas in the latter case it was made during the life of the life beneficiary.

In *Harvard Trust Co.* v. *Duke*, 304 Mass. 414, 417, 418, the distinction between cases where the investment is un- productive at the death of the testator and those where it is then productive but later becomes unproductive was pointed out with a reference to some earlier cases of the first type where the sales had been made while the life beneficiary was living and apportionment was denied. See also *Spring- field Safe Deposit & Trust Co.* v. *Wade*, 305 Mass. 36, 39. In the two cases just cited it was recognized that in the second type of case just mentioned apportionment of pro- ceeds of the sale should be made between principal and income. In *Springfield Safe Deposit & Trust Co.* v. *Wade* it was so held. But it does not appear that in the type of

case there considered this court has heretofore ever been called upon to decide whether such an apportionment should be made where the sale was made, as in the present case, after the death of the life beneficiary. In addressing ourselves to that question we exclude from consideration the fact that in the *Ogden* case the investment was unproductive at the inception of the trust. That decision was not rested upon that proposition and we confine ourselves for the present to the consideration of whether the fact that the sale here involved was made after the death of Miss Richardson is a bar to apportionment if otherwise it would be proper.

The *Ogden* case was decided in 1917, at a time when conditions surrounding investments were far different from those existing since the depression. It is common knowledge that since 1930 "substantially all securities proper for trust investment have fallen in value . . . ." *First National Bank of Boston* v. *Truesdale Hospital*, 288 Mass. 35, 45. The memorandum of real estate held under the trust here involved, showing several parcels of real estate held upon foreclosure of a book value of over $130,000, gives evidence of conditions that have prevailed for a number of years.

Prior to the depression, which started in 1929, there were but few cases involving the question of apportionment of proceeds of sale of unproductive investments. Most of those that bear on the issues before us have arisen since 1929 and had to do with mortgage investments. Cases cited by the executor of Miss Richardson as governing were all decided after the year 1935. See *Matter of Chapal*, 269 N. Y. 464 (1936); *Matter of Otis*, 276 N. Y. 101 (1937); *Matter of McManus*, 282 N. Y. 420 (1940);[1] *Nirdlinger's Estate*, 327 Penn. St. 171 (1937). Reference may also be had to *Nirdlinger's Estate*, 331 Penn. St. 135; *In re Kuhn's Estate*, 284 Mich. 450 (1938). The subject is discussed in Am. Law Inst. Restatement: Trusts (1935) § 241, Comments

---

[1] The subject matter has been disposed of in the State of New York by N. Y. Laws of 1940, c. 452, abolishing apportionment of proceeds of sale of real property acquired by foreclosure or conveyance in lieu thereof between life tenant and remainderman, and making specific provision for certain payments to the life tenant pending salvage operations. See *Matter of West*, 175 Misc. (N. Y.) 1044.

f, g, and in 2 Scott on Trusts (1939) § 241.6, where the view is taken that where there are successive life interests and the sale does not take place until after the expiration of the first period, the proceeds should be allocated between principal and income and the personal representative of the first beneficiary should be entitled to a part of the income in proportion to the period in which he was entitled to income.

It is apparent that, because of unusual conditions in the real estate market existing quite generally, the subject of mortgage investments took on an importance to income takers as well as to remaindermen under trusts, to say nothing of the public generally, which gave rise to cases such as those already referred to. An examination of the cases in other jurisdictions where the unproductive investment was sold after the death of a beneficiary who had suffered loss of income in connection with the investment discloses an acceptance of the principle that apportionment should be made in most circumstances and that payment of the sum allocated to income to the date of death of the beneficiary should be made to his estate. See *Stewart* v. *Kingsale*, [1902] 1 Ir. R. 496; *In re Kuhn's Estate*, 284 Mich. 450; *Matter of McManus*, 282 N. Y. 420 (but see now N. Y. Laws of 1940, c. 452) and cases cited in 2 Scott on Trusts, § 241.6, note 1.

The uniform principal and income act, § 11, 9 U. L. A. page 601 (adopted in several States but not in this Commonwealth), reads in part as follows: "Unproductive Estate. — (1) Where any part of a principal in the possession of a trustee consists of realty or personalty which for more than a year and until disposed of as hereinafter stated has not produced an average net income of at least one per centum per annum of its fair inventory value or in default thereof its market value at the time the principal was established or of its cost where purchased later, and the trustee is under a duty to change the form of the investment as soon as it may be done without sacrifice of value and such change is delayed, but is made before the principal is finally distributed, then the tenant, or in case of his death his personal

representative, shall be entitled to share in the net proceeds received from the property as delayed income to the extent hereinafter stated. . . . (5) In the case of successive tenants the delayed income shall be divided among them or their representatives according to the length of the period for which each was entitled to income." Statutes following the terms of § 11 have been enacted in several States. See Ala. Code 1940, Tit. 58, § 85; Cal. Sts. 1941, c. 898, § 11; Fla. Laws 1937, c. 18392, § 11; Ill. Rev. Sts. 1941, c. 30, § 170; La. Act No. 81 of 1938, § 77; N. C. Pub. Laws of 1937, c. 190, § 11; Okla. Sess. Laws of 1941, Tit. 60, c. 4, § 35; 5 Ore. Comp. Laws Ann. of 1940, § 74–111; Utah Laws of 1939, c. 127, § 11; Va. Acts of Assembly of 1936, c. 432, § 11.

In view of the trend of judicial thought expressed in decisions in other jurisdictions, of legislative opinion as expressed in recent statutes in other States, and of opinions of other recognized authorities to which we have referred, and in recognition of the fundamental changes that have given rise to those decisions, statutes and opinions, we are of opinion that it should now be held by us that an apportionment of the proceeds of a sale of land held as a result of a mortgage investment which becomes unproductive in the hands of the fiduciary is not to be denied merely because the sale was effected after the death of a life beneficiary, during whose lifetime the investment became unproductive with resultant loss of income to which he would otherwise have been entitled.

The remaining question is whether in all the circumstances of the case it is appropriate that an apportionment of the proceeds of the sale involved should be made between principal and income as decreed in effect by the judge. In this connection we are of opinion that it cannot be said rightly that that apportionment followed as a logical development of the doctrine of *Springfield Safe Deposit & Trust Co.* v. *Wade,* 305 Mass. 36. In that case, as distinguished from the present case, the unproductive investment had been fully liquidated in cash which was in the hands of the trustee. A correct and final mathematical computation was

possible in that case. There was no uncertainty about it; nothing was left to future determination by virtue of any purchase-money mortgage back. The rights of all interests were determined so far as that investment was concerned. There was no invasion of the principal of the trust represented by other investments. In the instant case the trust has not terminated and the investment has not been wholly liquidated in a form susceptible of proper apportionment. The purchase price was not paid wholly in cash, but was paid partly in cash and partly by purchase-money mortgage back on the premises. For the most part, except as to amount, the investment still remains substantially the same as that which failed. After proper allocation to principal in accordance with the rule laid down in *Springfield Safe Deposit & Trust Co.* v. *Wade,* 305 Mass. 36, 38, there was no cash to satisfy the estate of Miss Richardson for loss of income sustained by her. The apportionment decreed invades principal of the trust which never was concerned with the unproductive investment in question. It calls upon the present beneficiaries to pay out of principal a sum to make up for loss of income in connection with a separate and distinct investment; in brief, to use the good to pay for the bad. It is settled that losses in one investment cannot be set off against other investments, and that each investment must stand or fall by itself. See *Creed* v. *McAleer,* 275 Mass. 353, 362; *Hudson County National Bank* v. *Woodruff,* 122 N. J. Eq. 444, 448, *S. C.* 123 N. J. Eq. 585.

In the present case there is nothing in the record to show that the purchase-money mortgage accepted in part payment for sale of the premises constitutes a valid trust investment, rather than one made of necessity for the purposes of salvage, or that when ultimately disposed of it will not be for less than its face value, with the result that the estate of Miss Richardson will have been overpaid. If the mortgage back is an improper trust investment, the salvage operation continues, and unforeseen losses and expenses or a default may operate to reduce the amount credited in the account as allowed as payable to the estate of Miss Richardson, to the prejudice of the present beneficiaries.

In all the circumstances we are of opinion that no apportionment should now be made of the proceeds of the sale in question between principal and income, but that they should be held in principal account until the salvage operation is completed.

The decree entered in the Probate Court is reversed and instead thereof a final decree is to be entered in accordance with this opinion.

*Ordered accordingly.*