*Decisions will be entered under Rule 50.*

ROY DIXON AND LOUISE DIXON, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39678.    Filed May 8, 1957.

*Lawrence R. Bloomenthal, Esq.*, for petitioner Roy Dixon.
*Douglas M. Haynes, Esq.*, for petitioner Louise Dixon.
*John K. Lynch, Esq.*, for the respondent.

342

OPINION.

WITHEY, *Judge:* The respondent takes the position that although the document prepared by Graham for the petitioners for 1950 and

received in the collector's office on January 15, 1951, was not signed and verified by either of them, the omission was rectified by their confirmation and adoption of the copy as a joint return in their petition filed herein on March 28, 1952. He contends that in view of such confirmation and adoption and in view of the statement made by Louise on April 2, 1952, and sworn to by her that the document was her joint return with Roy for 1950, we should conclude that petitioners intended to and did file a joint income tax return for 1950 and that it was proper for him to determine against them jointly the deficiency and additions to tax herein involved. Taking the position that she received no taxable income in 1950, that she was not liable for and did not file an income tax return for that year, that she had no knowledge of a joint income tax return having been prepared for her and Roy for that year, that she did not intend to and did not file a joint income tax return with Roy for that year, and that under duress from Roy she swore to the petition filed on March 28, 1952, in which it was recited that the copy of the document was confirmed and adopted as a joint return, Louise contends we should conclude that she is not liable for any portion of the deficiency and the additions to tax.

The above-stated position of Louise stems from an amended petition which, at the hearing herein in October 1956, she was granted leave to file and from the evidence submitted by her at the hearing. Despite her position to the contrary, we are satisfied that Louise knew that Graham prepared a joint income tax return for her and Roy for 1950, of which the document involved herein is a copy. We are also satisfied that she not only participated in furnishing him with the information which he used in preparing the return but also discussed with him the matter of signing it.

Although the record shows that, beginning as early as 1949, on occasions when under the influence of intoxicants, Roy inflicted personal violence upon Louise and, in the home, discharged firearms in her direction, we are unable to conclude that those acts, or her anticipation that such acts might be repeated, influenced her in her relationship to the clearinghouse and rental operations during 1950 or in her conduct with respect to any income tax matter relating to that year. The record shows that in 1949 Roy withdrew from a partnership of which he was a member and which engaged in the gambling business. His action resulted from the objection by Louise, who kept the records of the firm, to a change in the firm's bookkeeping arrangement proposed by the other members of the firm. At the several times Graham discussed with them the matter of their filing a joint income tax return, the attitude of petitioners toward each other was that of the ordinary husband and wife.

At the time petitioners swore to the joint petition, they had been separated for about a month and had not seen nor communicated with

each other during that time. From the time she swore to the joint petition until about a month prior to the hearing herein, or for a period of about 4½ years, during approximately 4 years of which she was divorced from Roy, Louise was in Bloomenthal's office on various occasions and discussed the instant case with him, but at no time did she tell him that she had sworn to the petition under duress from Roy. In the foregoing situation, we are of the opinion that the contention of Louise as to duress is without merit.

The next question for consideration is whether the document which was not signed by either of the petitioners is to be regarded as their return for that year. Pertinent portions of the Internal Revenue Code of 1939 are set out below.[1] Under section 51 (a) of the Code every individual having a gross income of $600 or more for the taxable year is required to make a return. Further, the section requires that the return "shall contain or be verified by a written declaration that it is made under the penalties of perjury." Section 51 (b) (1) provides that a husband and wife may make a single return jointly and that if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several. From the language of section 51 (a) and (b) (1), it is clear that the verification of the return and the method thereof are mandatory while the making by a husband and wife of a single return jointly is merely permissive.

*Lucas* v. *Pilliod Lumber Co.*, 281 U. S. 245, affirming 7 B. T. A. 591, arose under the Revenue Act of 1918. Section 239 of that Act provided that every corporation subject to taxation under the title there involved should make a return and that "[t]he return shall be sworn to by the president, vice president or other principal officer and by the treasurer or assistant treasurer." The taxpayer in that case filed with the collector in May 1919 what purported to be a return for 1918 which was not signed or sworn to by anyone. More than 4 years afterwards and in September 1923 and pursuant to a request from the Commissioner, the taxpayer's president and treasurer swore to and filed with him an affidavit concerning the purported return. In the affidavit, they stated that they affirmed that their names should have appeared on the taxpayer's purported return for 1918 which to the best of their knowledge and belief was correct. Thereafter, in October 1925, the Commissioner determined a deficiency in tax for

---

[1] SEC. 51. INDIVIDUAL RETURNS.

(a) REQUIREMENT.—Every individual having for the taxable year a gross income of $600 or more shall make a return, which shall contain or be verified by a written declaration that it is made under the penalties of perjury. * * *

(b) HUSBAND AND WIFE.—

(1) IN GENERAL.—A husband and wife may make a single return jointly. Such a return may be made even though one of the spouses has neither gross income nor deductions. If a joint return is made the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.

1918. The taxpayer contended that the period of limitations for assessment began to run in May 1919 when the unverified purported return was received by the collector and that, although it was not supported by oath, the defect was cured or became immaterial since the tax officers accepted and held it for several years and in 1923 requested and obtained an adequate verification thereof by the proper corporate officers. In holding adversely to the taxpayer, the Supreme Court said that the running of the statute was conditioned upon the presentation of a return duly sworn to, that no tax officer had power to substitute something else for the thing specified, and that so long as the purported return remained unverified by oath of the proper corporate officers it did not meet the requirements of section 239.

Section 51 of the Revenue Act of 1934 required that the returns of individuals be verified under oath. In *Theodore R. Plunkett*, 41 B. T. A. 700, affd. 118 F. 2d 644, the taxpayer through inadvertence failed to sign and swear to his purported return for 1934 which he mailed from Adams, Massachusetts, on March 15, 1935, to the collector in Boston and which was received by the collector on March 18, 1935. In April 1936, the entire amount of tax shown due on the purported return and paid by the taxpayer was refunded. Thereafter, on March 5, 1938, the respondent determined a deficiency for 1934 greatly in excess of the amount of tax shown on the purported return and asserted an addition to tax for delinquency because of failure to file a return as required by section 51 of the Revenue Act of 1934 within the time required by that Act. After a petition had been filed with the Board and issues joined, the taxpayer prepared and properly executed a return for 1934 which was filed with the collector on October 8, 1938. In holding that the taxpayer was liable for the addition to tax for delinquency, the Board said (p. 711):

The purported income tax return of the petitioner for 1934 mailed by the petitioner from Adams, Massachusetts, on March 15, 1935, was not a return required by the statute. *It was no return at all.* The first return which was filed was filed on October 10, 1938. That return was filed after all the pleadings in this case had been filed and issue joined. It was filed too late to avoid the attachment of a penalty. * * * [Emphasis supplied.]

Although it is true that the *Pilliod Lumber Co.* case involved the question of the expiration of the period of limitations and the *Plunkett* case involved the question of liability for an addition to tax for delinquency, the clear import of those cases is that a document which is not verified in accordance with the requirements of the statute is not the return required by the statute. Further, the *Pilliod Lumber Co.* case makes clear that no tax officer has power to substitute something else for the verification specified by the statute.

As heretofore observed, section 51 (a) of the Code requires that the return made by an individual "shall contain or be verified by a written

declaration that it is made under the penalties of perjury." The document here involved contains, immediately preceding spaces for signature, the following:

I declare under the penalties of perjury that this return (including any accompanying schedules and statements) has been examined by me and to the best of my knowledge and belief is a true, correct, and complete return.

But the document was not signed by either Roy or Louise and the record does not disclose that they, or either of them, ever executed in any form a verification of it. Although the joint petition sworn to and filed by them contains the recital that they thereby confirmed and adopted the document "as a joint return and request the Court to accept it as such in all respects," it is to be observed that that recital does not purport to be a verification of the document under "the penalties of perjury." Nor are we able to find elsewhere in the petition anything purporting to be such a verification. Obviously the statement of Louise on April 2, 1952, to representatives of the respondent that the document was the joint return of herself and Roy does not purport to be a verification.

The respondent does not cite any decision where, in a situation like or similar to that presented here, it was held that an unsigned and otherwise unverified duplicate copy of a purported income tax return was held to be the return required by statute and was to be given effect as such. Nor have we found any such decision. Accordingly, in the situation presented we are of the opinion that the unsigned document here involved was neither a joint return of Roy and Louise nor a separate return of either of them within the purview of section 51 (a) and (b) (1) and that they therefore are to be regarded as not having made any income tax return for 1950.

The next question for determination is whether the respondent may properly determine a deficiency and an addition to tax for fraud against an individual for a year for which he has not made a return. That question has been answered in the affirmative in a number of cases including *Fred N. Acker*, 26 T. C. 107, and *Joseph Calafato*, 42 B. T. A. 881, affd. 124 F. 2d 187. In the *Calafato* case, the taxpayers, husband and wife, filed no returns of income for a number of years. The Commissioner determined that they had received substantial amounts of income, some of which had been deposited in accounts standing in the name of one or both, and that there had been a commingling of funds and payments of the obligations of one out of the account of the other. Since the Commissioner was unable to obtain any information from the taxpayers as to the source and ownership of such funds, he treated the deposits in the banks as joint income of taxpayers and mailed one notice of deficiency to both of them advising them of his determination of deficiencies and additions to tax for

fraud. The taxpayers joined in a petition to the Board for a redetermination of the deficiencies and additions to tax. The taxpayers contended that a joint deficiency might properly be determined against a husband and wife only for years for which they had filed joint returns but cited no authority for their contention. Since the taxpayers had filed no returns, had kept their books and records in such a manner that it was impossible for the Commissioner to determine the separate income of either, and had not attempted to furnish the Board any information from which such determination could be made, the Board sustained the Commissioner's determination of the joint deficiency. Being satisfied that the taxpayers had received substantial amounts of income during each of the years in question and since the taxpayers had not filed any returns for those years, the Board sustained the additions to tax for fraud.

The respondent has determined that the taxable net income from the clearinghouse and rental operations was in excess of $113,000 for 1950. Neither of the petitioners contests the correctness of that determination. The record is clear that each of them was active in the production of that income. For a portion of that year, Louise maintained in her name a checking account which during the year was changed to a joint checking account in the name of her and Roy. Both before and after the change, receipts from the clearinghouse as well as from rents were deposited in the account and payments of expenses of the clearinghouse and rental operations were made from that account. The petitioners have not shown what portion of the net income determined by respondent might properly be regarded as the income of Roy or Louise. On the record presented we think the entire taxable net income determined by respondent may properly be regarded as the joint income of the petitioners and under the rule of the *Calafato* case taxed to them jointly. Accordingly, we sustain the respondent's action in determining the deficiency jointly against the petitioners.

The document prepared for the petitioners by Graham shows total net income of $8,732.95 received by petitioners from their clearinghouse and rental operations and a taxable net income of $7,859.65 for 1950. Those amounts were arrived at by Graham solely on the basis of information furnished him by the petitioners, who never made available to him the books kept for the clearinghouse operation and never informed him of the existence of those books. In the investigation of the tax liability of the petitioners for 1950, the respondent, through the use of the seized records of the clearinghouse operation and information otherwise obtained, determined that the petitioners had received from the clearinghouse and rental operations income of $105,282.09 in excess of that shown on the document.

From the evidence submitted we are satisfied that the petitioners received in 1950 a much greater amount of income than indicated by

the document which was filed with the collector. We think it obvious from the conduct of the petitioners in keeping a double set of books for the clearinghouse operation, in causing a document to be prepared from the set which was false, in filing the document or in causing it to be filed with the collector, and in not filing a proper return disclosing their actual income as required by law, the petitioners intended not only to conceal their true income but also intended to mislead respondent as to the amount of their true tax liability. Such conduct is evidence of fraud with intent to evade tax. *Spies* v. *United States*, 317 U. S. 492. The respondent's determination against the petitioners of the addition to tax for fraud is sustained.

Admittedly, the petitioners failed to file a declaration of estimated tax for 1950. They have not submitted any evidence from which we can find that such failure was due to reasonable cause and not to willful neglect. Accordingly, the respondent's determination against them of an addition to tax on account of their failure to file a declaration of estimated tax is sustained.

*Decision will be entered for the respondent.*