LEWIS G. WALLACE and LOTTIE N. WALLACE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Wallace v. Commissioner
Docket No. 8421-73.
United States Tax Court
T.C. Memo 1975-133; 1975 Tax Ct. Memo LEXIS 240; 34 T.C.M. (CCH) 619; T.C.M. (RIA) 750133; May 7, 1975, Filed John J. Weiler, for the petitioners. Bruce A. McArdle, for the respondent. SCOTT
MEMORANDUM OPINION SCOTT, Judge: On February 18, 1975, petitioners filed a motion to dismiss the above-entitled case as to the calendar year 1964 for lack of jurisdiction on the ground that the notices of deficiency issued by respondent for that year to petitioners were invalid since each of them was issued after the period of limitation for assessment of any deficiency in tax had expired. At the hearing held on petitioners' motion on February 24, 1975, at New Orleans, Louisiana, petitioners asked for and were granted leave to amend the motion to change the grounds from a jurisdictional ground, and in the alternative to change the motion to a motion for partial summary judgment. On March 3, 1975, petitioners *242 filed an amendment to their motion filed on February 18, 1975, to change the caption of the motion to read, "Motion to Dismiss or Motion for Partial Summary Judgment as to the Taxable Year 1964." In our view petitioners' motion is a motion for partial summary judgment which is permitted by Rule 121 of our Rules of Practice and Procedure in that the motion asks for an adjudication in petitioners' favor as to a legal issue for the year 1964 and we will so treat petitioners' motion. The facts which are set forth in petitioners' motion and the documents and an affidavit attached thereto are not disputed by respondent. These facts show that on June 10, 1965, petitioners filed with respondent a Form 1040, "U.S. Individual Income Tax Return--1964," which set forth income from various sources and deductions and showed a computation of tax due. This Form 1040 was signed by a C.P.A. as the preparer of the return but was not signed by either of petitioners. The C.P.A. who signed the Form 1040 as the preparer did not sign it under either oral or written power of attorney to sign on petitioners' behalf and did not have any authority to sign on behalf of petitioners. All of petitioners' returns *243 since 1962 had been prepared by the C.P.A. who prepared the Form 1040 for petitioners for the year 1964. The C.P.A. prepared the Form 1040 for 1964 from petitioners' records. Petitioners had obtained an extension of time to file their 1964 return to May 2, 1965. Shortly before the expiration of the extension of time granted to petitioners for filing the return for the year 1964, petitioners received from the C.P.A. their records and the Form 1040 for the year 1964 prepared for them by the C.P.A. Petitioners reviewed the form prepared for them by the C.P.A., which took them several days, and then after the expiration of the period of extension for filing their 1964 return sent that form, unsigned, to the Internal Revenue Service accompanied by a check dated June 8, 1965, covering the amount of tax shown as due on the return. The check was cashed by the Internal Revenue Service. On August 13, 1965, petitioners received a statement from the Internal Revenue Service on a United States Treasury Department form showing a penalty of $131.83, interest of $12.22, or a total of $144.05 as due from petitioners for failure to timely file a return. By check dated August 19, 1965, petitioners *244 paid the $144.05 shown as due on the statement received from the Internal Revenue Service. On December 12, 1967, petitioners filed, on Form 843, a claim for refund of taxes illegally, erroneously, or excessively collected. This claim showed that it was for income tax, that the amount of assessment of income tax of $2,796.27 for the year 1964 had been paid by petitioners in 1964 and 1965, and that the amount claimed to be refundable was $2,409.98. The claim stated: k. The claimant believes that this claim should be allowed for the following reasons: Taxpayers had a $2,806.00 net
operating loss in 1965.
$12,067.37
is carried back to 1964 as
shown on attached schedule.
Taxable income per return
12,861.71
Carryback from 1965
12,067.37
$ 794.34 Under computation of income tax refund, petitioners showed the following: 1. Tax withheld
$ 478.00
2. Estimated tax paid
1,000.00
3. Tax paid with original return
1,318.27
4. Any additional income tax paid
5. Total tax paid (Add lines 1-4)
2,796.27
6. Less: Your computation of correct
tax 127.09 + 259.20 Self
Exemption tax
386.29
7. Amount of overpayment
2,409.98
8. Amount previously refunded
0
9. Net overpayment (Enter in item i
above)
2,409.98
*245 Following the computation on the claim the following appeared: Under penalties of perjury, I declare that this claim, including any accompanying schedules and statements, has been examined by me and to the best of my knowledge and belief it is true and correct. Signed L.G. Wallace
Dated 12/12/1967Lottie N. Wallace
Petitioners' failure to sign the Form 1040 which they sent to the Internal Revenue Service was because of oversight. They were not specifically notified by any employee of the Internal Revenue Service that the Form 1040 they had sent to the Internal Revenue Service in June 1965 was unsigned until 1970 following an audit of their books by an internal revenue agent, at which time they were advised that there was being assessed against them for 1964 penalty and interest for failure to file an income tax return for 1964. On August 24, 1973, respondent issued to each of petitioners a notice of deficiency showing a deficiency in income tax of each petitioner for the calendar year 1964 and additions to tax under sections 6651(a) and 6653(a), I.R.C. 1954, [1] due from each petitioner. *246 Petitioners' primary position is that the Form 1040 filed by them with the Internal Revenue Service on June 10, 1965, is a return within the meaning of section 6501(a), which provides that any amount of tax imposed by the Internal Revenue laws shall be assessed within 3 years after the return was filed. It is petitioners' position that the 3 years provided for in section 6501(a) expired on June 10, 1968, over 5 years prior to the date of respondent's notices of deficiency to them. In Lucas v. Pilliod Lumber Co.,281 U.S. 245 (1930), the Supreme Court held that a document filed on a form for an income tax return which was not supported by oath as then required by the statute, did not operate to start the running of the Statute of Limitations on assessment of tax. The Court further pointed out that it did not accept the taxpayer's argument that the defect of failure to sign and swear to the return was cured by respondent's holding the return for several years before notifying the taxpayer of the defect since a statute of limitations runs against the United States only *247 upon the conditions prescribed. The prescribed condition for assent for the statute of limitations to begin running under the Internal Revenue Code was presentation of a return duly sworn to. The Court further stated that, "no officer had power to substitute something else for the thing specified," and that so long as the purported return remained unverified by oath, it did not meet the requirement of the statute. In Theodore R. Plunkett,41 B.T.A. 700, 711 (1940), aff'd. 118 F. 2d 644 (C.A. 1, 1941), following Lucas v. Pilliod Lumber Co.,supra, we held that a form filed by an individual which was not signed or sworn to, was not a return required by the statute and "was no return at all." In 1942 the requirement that an income tax return filed by an individual be made under oath was removed by statute. However, this Court and other courts have held the case of Lucas v. Pilliod Lumber Co.,supra, and the cases following the holding in that case to be applicable for years after 1942 to an unsigned form filed by a taxpayer on the required form for filing a tax return. In Peter Vaira,52 T.C. 986, 1005 (1969), *248 affirmed on this issue, reversed and remanded on other grounds 440 F. 2d 770 (C.A. 3, 1971), we stated as follows: Until 1942, taxpayers had to make their returns under oath. Under such a statute, a return form unsigned and unsupported by oath obviously could not constitute a valid return. Lucas v. Pilliod Lumber Co.,281 U.S. 245 (1930); Theodore R. Plunkett,41 B.T.A. 700, 710-711 (19408, affd. 118 F. 2d 644 (C.A. 1, 1941). The 1942 Revenue Act did away with the oath requirement so far as individuals were concerned and in its place substituted a written verification subject to the penalties of perjury. 56 Stat. 798, 836. This provision is now embodied in section 6065. Congress made this change merely to avoid inconvenience to taxpayers; there was no intention of changing the result reached in Lucas v. Pilliod Lumber Co.,supra.See S. Rept. No. 1631, 77th Cong., 2d Sess., pp. 5, 107 (1942). Moreover, sections 6061, 6062, and 6063 require all returns to be signed. See also section 7206. Yet no specific penalty is provided for a failure to sign. We recognize that the unsigned return was *249 accompanied by a signed check. But neither the signature on the check nor the acceptance of the check by respondent can be considered an imputed signature on the return itself. Cf. Roy Dixon,28 T.C. 338, 342, 346-348 (1957); see Brafman v. United States,384 F. 2d 863, 868 (C.A. 5, 1967). It is hardly conceivable that such a procedure would be sufficient to support a perjury charge based on a false return--one of the principal sanctions available to assure that honest returns are filed. See Reaves v. Commissioner,295 F. 2d 336, 338 (C.A. 5, 1961), affirming 31 T.C. 690 (1958). We can only construe this to mean that an unsigned return is no return at all. [Footnote omitted.] See Roy Dixon,28 T.C. at 347. Petitioners have referred to certain cases, some of them in the United States Court of Appeals for the Fifth Circuit to which an appeal in this case would lie, which hold that a return signed in the name of an individual and on his behalf by a person duly authorized to sign the return for him *250 is a valid return. These cases have no application to the facts in the instant case since the parties agree here that the C.P.A. who signed the Form 1040 as preparer had no authority to sign and did not sign the Form 1040 on behalf of petitioners. In Reaves v. Commissioner,295 F. 2d 336, 338 (C.A. 5, 1961), affirming 31 T.C. 690 (1958), the Fifth Circuit rejected the taxpayer's contention that an unsigned return form was a return such as would meet the statutory requirements for filing a return. In that case the court distinguished its holding in Miller v. Commissioner,237 F. 2d 830 (C.A. 5, 1956), reversing a Memorandum Opinion of this Court on the ground that in the Miller case, the taxpayer had authorized his wife to sign his name to the return, and she had done so. The Fifth Circuit, in the Reaves case, sustained our holding that no return had been filed when a return form unsigned had been submitted, stating that "[without] a signature it can hardly be said that a return contained or was verified by a written declaration *251 that it is made under the penalties of perjury." It is equally clear, contrary to the position that petitioners take, that the action of employees of the Internal Revenue Service in accepting a check tendered with the unsigned form of return, or in asserting interest or an addition to tax, cannot constitute a waiver of the statutory requirements for the filing of a return. As we pointed out in Roy Dixon,28 T.C. 338, 347 (1957), the Pilliod Lumber Co. case "makes clear that no tax officer has power to substitute something else for the verification specified by the statute." Petitioners argue that if this Court concludes that prior holdings of this and other courts that a document filed on the form for an income tax return which is unsigned is not a return under the requirements of section 6501 and does not commence the running of the statute of limitations applies to the facts here, the holding of these cases should be reconsidered. In our view the holding of these cases is correct and we follow the holding in our prior cases that an unsigned return is no return at *252 all. Petitioners in the alternative argue that the refund claim filed by petitioners in this case on Form 843 was comparable to a late verification of the Form 1040 which had been filed on June 10, 1964, and therefore under the holding of the Supreme Court in the Pilliod Lumber Co. case, it should be considered that a return was filed by them on December 12, 1967, the date the Form 843 claim was sworn to. Petitioners point out that in the Pilliod Lumber Co. case, the facts show that the unsigned Form 1120 ("Corporate Income Tax Return") for the year 1918 which had been submitted to the Internal Revenue Service on May 31, 1919, was later verified on September 17, 1923, in answer to a request from the Internal Revenue Service by an affidavit which stated that the undersigned affirmed that their names should have appeared on their income tax return for 1918, which, to the best of their knowledge and belief, was correct, and that they were unable to furnish a duplicate signed return, being unable to locate a copy. This affidavit was sworn to by the president and treasurer of the corporation. Petitioners state that the inference from the opinion in the Pilliod Lumber Co. case *253 is that the return was properly filed on September 17, 1923, when the affidavit was signed and filed with the Internal Revenue Service. Petitioners draw this inference from the statement in that case (281 U.S. at 249) that, "[the] return so long as it remained unverified by oath of proper corporate officers did not meet the plain requirements." Even if we accept petitioners' interpretation of the Pilliod Lumber Co. case and assume that a statement signed by petitioners that "under penalties of perjury, I declare that I have examined" the Form 1040 received by the Internal Revenue Service on June 10, 1965, "including accompanying schedules and statements, and to the best of my knowledge and belief is is true, correct, and complete," would have cured the defect of petitioners' failure to file the Form 1040 under penalties of perjury, in our view the Form 843 filed by petitioners on December 12, 1967, does not constitute such a statement. In Roy Dixon,supra, the Commissioner contended that a joint petition to this Court signed and sworn to by the taxpayers containing a recital that they confirmed and adopted the document submitted by them *254 "as a joint return and request the Court to accept it as such in all respects" did not purport to be a verification of the income tax form document under the penalties of perjury and would not cure the defect of the unsigned document filed on a return form so as to make it a "return." Here, even though petitioners signed the Form 843 declaring that "under penalties of perjury," they declared that this claim including any accompanying schedules and statements had been examined by them and to the best of their knowledge and belief was true and correct, this statement is not a statement declaring under penalties of perjury that to the best of petitioners' knowledge and belief, the statements contained on the unsigned Form 1040 filed by them, together with the schedules attached to that document, are true and correct. In our view there is no distinction in petitioners' contention here that the defect in the Form 1040 as filed by them, which caused it to be no return within the provisions of section 6501, was remedied by the verification under penalties of perjury contained in the Form 843 claim filed by them, and the contention we rejected in Roy Dixon,supra, that the recital *255 in the petition remedied the defect of verification under penalties of perjury of the income tax return form filed by the taxpayers in that case. We therefore conclude that the facts here do not sustain petitioners' contention that the assessment against them of any income tax for the calendar year 1964 was barred by the statute of limitations contained in section 6501 on August 24, 1973, when respondent issued a notice of deficiency to each of them. An order denying petitioners' motion filed February 18, 1975, as amended on March 3, 1975, will be entered. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩