VINCENT RIPORTELLA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Riportella v. Commissioner
Docket No. 10555-79.
United States Tax Court
T.C. Memo 1981-463; 1981 Tax Ct. Memo LEXIS 281; 42 T.C.M. (CCH) 869; T.C.M. (RIA) 81463; August 26, 1981. *281 Vincent Riportella, pro se. Julius Jove, for the respondent. EKMAN
MEMORANDUM FINDINGS OF FACT AND OPINION EKMAN, Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1975 in the amount of $ 4,998.58 and an addition to tax under section 6653(a) in the amount of $ 249.93. The issues for decision are (1) whether petitioner filed a joint income tax return for the taxable year 1975 and (2) whether the underpayment of tax, if any, for the taxable year 1975 was due to negligence or intentional disregard of rules and regulations on the part of petitioner. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner, Vincent Riportella, resided in New York, New York, at the time he filed his petition herein. Petitioner's 1975 income tax return was filed with the Internal Revenue Service Center at Holtsville, New York, on June 10, 1976, in accordance with a timely filed Form 4868 (Application for Automatic Extension of Time to File U.S. Individual Income Tax Return). Petitioner and his former wife, Audrey *282 Brig Riportella (hereinafter Audrey), were married in 1973. For the taxable years 1973 and 1974 petitioner and Audrey signed joint income tax returns. In 1973 and 1974 petitioner took responsibility for filing the joint returns and hired Irving Gottlieb (hereinafter Gottlieb), a certified public accountant, to prepare the returns. Audrey never questioned petitioner's judgment on business matters, including the filing of the tax returns. She left the responsibility for preparation and filing of the returns to herr husband and would only cursorily examine the returns prior to signing them. During 1975 petitioner and Audrey had marital problems. In April, 1976, Audrey and petitioner signed Form 4868 for an automatic extension of time to file a return in the joint names of Vincent and Audrey Brig Riportella. A letter from Audrey's attorney to petitioner's attorney accompanied the Form 4868 and stated that Audrey's execution of Form 4868 was "not to be construed as her commitment, promise or willingness to execute any joint income tax returns" with petitioner for 1975. Petitioner and Audrey separated in May, 1976. In June, 1976, when petitioner asked Audrey to sign the 1975 *283 joint income tax return, she responded, "What will you do for me if I sign it?" Petitioner refused to do anything in exchange for her signature, and Audrey refused to sign the return. A 1975 tax return was filed on June 10, 1976. The names "Vincent and Audrey Brig Riportella" were typed in the caption; however, the only signature on the return was that of Gottlieb, the preparer. The designated filing status was that of "married filing joint return." Neither petitioner nor Audrey signed the return. During the taxable year 1975 Audrey had no taxable income; she was supported solely by petitioner and did not file a separate return in her own name. On the tax return which was filed, three personal exemptions were claimed--one for each spouse, one for a dependent child. After the Internal Revenue Service began an audit of the 1975 return, Audrey wrote to the Service on May 5, 1977: I am not liable for the above taxes. I did not sign the forms nor the rebate check. The last income tax forms and rebate check I signed covered the year 1974. Therefore this is to serve notice that I have no responsibility for the 1975 taxes. I would be most grateful if you would be kind *284 enough to acknowledge this fact and this letter by sending your own letter to me at my new residence. On March 30, 1978, Audrey's attorney wrote to the Service explaining further his client's position: In answer to your communication of March 23, 1978, addressed to both Mr. and Mrs. Riportella, please be advised that matrimonial litigation is pending between them. This office represents Audrey Riportella. According to what Mrs. Riportella has told me, she did not sign the 1975 tax return, nor did she authorize or consent to anyone signing such tax return for her. Furthermore, the tax return was prepared by Mr. Riportella and by his accountant. The foregoing information is given to you as a guide as to how to proceed with your requested audit. OPINION The first issue for decision is whether petitioner filed a joint income tax return for the taxable year 1975. Respondent's position is that Audrey, petitioner's former wife, did not sign the return, did not intend to file a joint return, and did not acquiesce in the filing of a joint return. The deficiency thus asserted is based on the difference between the tax due on a return of a married individual filing separately *285 and the tax in fact paid by petitioner computed on the basis of a joint return. Petitioner's position is that while Audrey refused to sign the return, she never intended not to file a joint return. Petitioner contends Audrey at all times intended to join in the filing of a joint return, but due to circumstances having no relationship to the tax return, she was in a position to use her signature as a bargaining chip in the divorce process. Due to the particular factual scenario of this case, petitioner's position is the more persuasive; and we therefore hold the return in issue is a joint return. Failure of one spouse to sign a return is not fatal to the finding of a joint return. Hennen v. Commissioner, 35 T.C. 747 (1961); Heim v. Commissioner, 27 T.C. 270 (1956), affd. 251 F.2d 44 (8th Cir. 1958). The determinative factor is whether the spouses intended to file a joint return. Estate of Campbell v. Commissioner, 56 T.C. 1 (1971); Federbush v. Commissioner, 34 T.C. 740 (1960), affd. per curiam 325 F.2d 1 (2nd Cir. 1963). The Commissioner's determination that a return is joint *286 or individual is prima facie correct, and petitioner has the burden of proof of showing error in such determination. Welch v. Helvering, 290 U.S. 111 (1933), O'Connor v. Commissioner, 412 F.2d 304 (2nd Cir. 1969), Rule 142, Tax Court Rules of Practice and Procedure.
Petitioner here has carried his burden. The evidence clearly establishes Audrey had no taxable income for the year in issue and petitioner was her sole source of support. In all other years since their marriage Audrey and petitioner had filed joint tax returns. Petitioner was always responsible for the execution of these returns, and Audrey would always sign the returns after a cursory examination without questioning the returns at all. Her signature on prior returns appears to have been little more than a formal ritual as far as she was concerned. We are not persuaded by Audrey's testimony that her method of dealing with tax returns suddenly changed in June, 1976. She testified that she wanted to see the figures for the taxable year 1975 and would not sign any tax form unless she could see how the figures were arrived at. While her testimony may evince a laudable posture, *287 we note that Audrey's testimony is not consistent with her actions of prior years. As we said in Estate of Campbell v. Commissioner, supra at 12-13: On the basis of the record before us, we conclude that the Campbells intended the 1964 return to be a joint return. We note in particular that the Campbells customarily filed a joint return for each year other than 1964 from at least 1960 through 1966. Mrs. Campbell did not examine such returns; she simply accepted her husband's preparation of the returns and signed them. Like the others, the 1964 return was filed as a joint return. The only significant difference was the absence of Mrs. Campbell's signature on the 1964 return. Viewed in this context, the absence of her signature is hardly of overriding importance. Her signature on prior and subsequent returns appears to have been little more than a formal ritual as far as she was concerned. She left the responsibility for preparation and filing of the returns to her husband. She intended the returns to be filed as he chose. We conclude that Mrs. Campbell intended the 1964 return to be filed in the same manner as was each of the others: as a joint return.
*288 Even a spouse's outright refusal to sign the return has not precluded the return from qualifying as a joint return. Federbush v. Commissioner, supra. In Federbush, the husband and wife were experiencing some personal difficulties at the time the husband asked the wife to sign the joint return. Since the wife refused to sign the return and the refusal was on the last day for filing the return, the husband signed the wife's name. In holding that the return so made was a joint return we said: There is no indication of record, even in Sylvia's own testimony, that her refusal to sign the return was because she did not wish to file a joint return or that she did not intend for it to have effect as a joint return * * *. * * * [W]e are persuaded that Sylvia's refusal to sign was due to matters wholly unrelated to the filing of the return and that she had no intention that the 1944 return should actually be different from the returns filed for other years. [Federbush v. Commissioner, supra at 757-758.] The record is absolutely devoid of any evidence that Audrey did not intend to file a joint return in 1975. Several exhibits which *289 purported to demonstrate Audrey's intent were introduced; however, each of these exhibits deals with her failure to sign the return, not with her intent to file a joint return. Presence or absence of a signature is not conclusive of intent or lack of intent to file a joint return. Chilcote v. United States, ( N.D. Ind. 1967, 20 AFTR 2d 5409, 67-2 USTC par. 9623). Neither Audrey's letter to the Internal Revenue Service in 1977 nor her attorney's letter to the Service in 1978 makes any reference to Audrey's intent or lack of intent to file a joint return. Both letters refer only to her failure to sign the return. Even the 1976 attorney's letter which accompanied the Form 4868 makes no reference to Audrey's intent. The cover letter merely states that execution of the Form 4868 is not to be construed as Audrey's commitment, promise or willingness to execute any joint income tax returns with petitioner. This is a neutral and carefully worded statement; it does not indicate an intent not to file any joint return. Even after respondent began his audit of the return, Audrey's attorney carefully confined his letter of March 30, 1978, to Audrey's failure to sign *290 the return and pointedly refrained from indicating in any way her intention as to the filing of a joint return. In the context of this case, the claim that Audrey never intended to file a joint return in 1975 appears to be purely an afterthought. Audrey's attempt to "sell" her signature adds further force to petitioner's position. Audrey was perfectly willing to sign the joint return if petitioner would make it worth her while. This, together with her signature on the Form 4868, indicates that Audrey at all times intended to file a joint return. She merely wanted a price for a valuable commodity, i.e., her signature. Audrey held all the cards and attempted to extract whatever concessions she could. In the midst of a divorce proceeding this is an all too common occurrence. One other aspect of this case should not go unremarked. Since neither spouse signed the return, respondent had three choices: he could determine that no valid return had been filed, [1] he could accept the return as a joint return, or he could, as he in fact did, consider the return to be the separate return of petitioner. We assume that he made that choice with an eye to the additional tax which could be *291 asserted, since the tax was fully paid if the return were accepted as a joint return. Under these circumstances we believe that the presumption of correctness accorded respondent's determination carries less than its usual weight. It appears that respondent's choice had less support in the objective facts before him than the position urged by petitioner--that the return was in fact a joint return. Based on the peculiar facts of this case, we hold that petitioner has carried his burden of establishing that Audrey intended to file a joint return. Due to our resolution of the first issue, the second issue becomes moot. Decision will be entered for Petitioner. Footnotes
1. Cf. Dixon v. Commissioner, 28 T.C. 338, 348↩ (1957). Respondent has not argued here that a valid return was not filed.