T.C. Memo. 1997-21


UNITED STATES TAX COURT


MORTON ZUCKERMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10713-93.                    Filed January 13, 1997.


Morton Zuckerman, pro se.

<u>Laurie B. Kazenoff</u>, <u>Laurence D. Ziegler</u>, and <u>Mark L. Hulse</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

BEGHE, <u>Judge</u>:  Respondent determined that petitioner and his wife, Pearl Zuckerman (Mrs. Zuckerman), were jointly liable for deficiencies in and additions to their Federal income taxes for 1986 and 1987 as follows:[1]

---

[1]Unless otherwise indicated, section references are to the
(continued...)

|  |  | Additions to Tax | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6661 |
| 1986 | $34,031 | $8,005 | $1,712 | [1] | $8,498 |
| 1987 | 26,867 | 6,118 | 1,348 | [2] | 6,202 |

[1]Fifty percent of the interest due on $34,031.
[2]Fifty percent of the interest due on $26,867.

For reasons discussed below, Mrs. Zuckerman is no longer a party to this case.  The issues for decision are:

(1)  Whether petitioner had unreported embezzlement income for 1986;

(2)  whether deposits to certain bank accounts held by petitioner represent unreported taxable income to him for 1987;

(3)  whether petitioner failed to report interest and dividend income for both taxable years at issue;

(4)  whether petitioner is entitled to deductions for Schedule A and Schedule C expenses in excess of the amounts allowed by respondent; and

(5)  whether petitioner is liable for additions to tax under sections 6651(a)(1), 6653(a), and 6661.

We sustain respondent's determinations in respect of each of the aforesaid issues to the extent specified herein.

---

[1](...continued)
Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. At the time the petition was filed, petitioner resided in Plainview, New York.

In 1985 petitioner was hired to conduct title closings for East Coast Abstracts, Inc., a title abstract agency located in Mineola, New York. Petitioner worked as an independent contractor. Steven Lieter (Lieter) and Stanley Levine (Levine) were the agency's officers and shareholders.

At some time during 1985, Lieter and Levine organized Consumer Equities Associates (CEA), a company whose business initially was to broker first mortgage loans from Citibank. At petitioner's suggestion, in early 1986 CEA entered the business of arranging second mortgages. Acting on CEA's behalf, petitioner would secure funds from investors to finance second mortgage loans for borrowers with a poor credit history. An investor's funds would be set aside in an interest-bearing account until CEA paid them to a borrower as a second mortgage loan and assigned the loan to the investor. In time the borrower's credit record would improve, thereby creating the opportunity to refinance on a first mortgage basis, and the investor would be repaid. Petitioner, Lieter, Levine, and Richard Cohen, the manager of CEA, each had signature authority

over the CEA account at the Mineola branch of Citibank, account No. 23429344.

In March or April 1986, Lieter and Levine became aware of financial irregularities at CEA. Checks were missing, and petitioner failed to provide satisfactory documentation of his activities. They responded by revoking his independent authority over the CEA bank account: henceforth petitioner would not be permitted to write checks on the account without the signature of one of the other three signatories. CEA began to receive complaints from individuals claiming that they had invested in second mortgages through petitioner's solicitations yet had not received interest payments or mortgage documentation. In most cases Lieter and Levine were unable to locate any records of the alleged transactions. In late May or early June 1986, petitioner's relationship with CEA and East Coast Abstracts was terminated.

Mildred Lawrence (Lawrence) was one of the numerous individuals who believed they had invested in second mortgages through CEA. Petitioner and his wife were close friends of the Lawrences. Shortly before his work for CEA began, petitioner informed Lawrence of the investment opportunities he would be handling and offered to select some safe mortgages for her. Between April and July 1986, she gave him three checks payable to CEA in the aggregate amount of $65,000. Petitioner represented to her that each of the checks would be used to acquire an

interest in a specific mortgage, that she would receive monthly interest payments of approximately 16 percent, and that her principal would be returned after about 1 year. By letters on CEA stationery dated May 9 and August 12, 1986, petitioner confirmed to Lawrence that she had purchased interests in three mortgages issued by borrowers named Guyre, Farber, and Small, that she would receive monthly interest payments at 16 or 19 percent, and that mortgage assignment documents would be sent to her "in a few days" or "in about two weeks".

A check drawn on CEA's account representing the initial interest payment for the first of Lawrence's three advances was sent to her on time. The second and third scheduled interest payments from CEA also may have been punctual. After she had given petitioner the third and final check in July, interest payments were few and sporadic, all checks sent to her were written on petitioner's personal accounts, and many of the checks bounced. Despite Lawrence's repeated requests, petitioner never sent her the mortgage assignment documents as he had promised. In April 1991, after Lawrence had threatened legal action against him, petitioner sent her an instrument purporting to evidence the assignment to her of a mortgage in the principal amount of $14,953 from one Frank Di Domenico. Noticing that petitioner had notarized the instrument and recognizing the signature of Frank Di Domenico to be in petitioner's handwriting, Lawrence filed a complaint against petitioner with law enforcement authorities.

On October 15, 1993, petitioner was indicted in Nassau County, New York, on multiple charges, including criminal possession of a forged instrument. Pursuant to a plea bargain, he was convicted of attempted criminal possession of a forged instrument, sentenced to 5 years' probation, and ordered to make immediate restitution to Lawrence in the amount of $14,953. There is no evidence that any of the mortgages ostensibly assigned to Lawrence ever in fact existed. Except for the restitution paid in late 1993 or early 1994, no part of the $65,000 principal that Lawrence entrusted to petitioner for mortgage investments was ever returned to her.

Each of Lawrence's checks was converted to petitioner's personal use. Check No. 929 for $25,000 dated April 17, 1986, was deposited by petitioner into the CEA account (No. 23429344) at Citibank on April 21. The bank statement for Citibank account No. 23429344 reflects that the next transaction was a withdrawal of $28,000 3 days later. A bank statement for Citibank account No. 23408658 shows a deposit of $28,000 on the same day, April 24, 1986. Citibank account No. 23408658 was one of petitioner's personal accounts.

Lawrence's check No. 993 in the amount of $30,000, dated June 25, 1986, was used by petitioner to open an account in CEA's name at the Port Washington, New York, branch of Citibank, account No. 13786145. Petitioner opened this account, over which he gave himself exclusive signature authority, without the

authorization or knowledge of the CEA principals.  Bank statements for account No. 13786145 show a post office box address in Albertson, New York, that petitioner used for several of his personal accounts.  Two weeks later, on July 14, petitioner withdrew the $30,000 plus accrued interest.  No other transactions occurred with respect to this account for the rest of 1986.

Lawrence's check No. 994 for $10,000, dated July 8, 1986, was deposited directly into one of petitioner's personal accounts at Fidelity Bank on July 14, 1986.

A Form 1040 that purports to be the joint Federal income tax return of petitioner and Mrs. Zuckerman for 1986 was filed on April 16, 1990.  Both spouses' names were signed to the return. The return shows gross income in the amount of $28,160, including $18,882 of wage income earned by Mrs. Zuckerman, and tax liability of $199.  The funds received from Lawrence were not reported.  A Form 1040 that purports to be the Zuckermans' joint Federal income tax return for 1987 was received by the Internal Revenue Service on March 8, 1990.  The Form was not signed by either spouse.  It reports gross income of $22,971, including $21,425 of Mrs. Zuckerman's wage income and Mrs. Zuckerman's gambling winnings net of gambling losses in the amount of $830. The Form shows a tax liability for the year of $98.

On audit, Revenue Agent Irwin Dickoff (Dickoff) could not determine the Zuckermans' income for 1987 from the records made

available to him, and consequently he resorted to an analysis of their bank deposits.  His analysis was limited to the accounts that he was able to identify through a search, using petitioner's Social Security number, of interest-bearing accounts reported to the Internal Revenue Service on Forms 1099.  In computing deposits made to each account, he excluded any funds transferred from other accounts held by the Zuckermans.  All deposits that could not be attributed to a nontaxable source on the basis of available information were deemed to represent taxable income. The results of the analysis are set forth below:[2]

| Bank | Account Number | Gross Deposits (incl. transfers) | Net Deposits |
|---|---|---|---|
| Fairfax Savings | 50-04-11525 | $600.00 | - 0 - |
| Fairfax Savings | 50-04-11517 | 1,000.00 | $1,000.00 |
| Fidelity | 3951002546 | 6,478.34 | 6,478.34 |
| Citibank | 23408711 | 13,486.36 | 11,986.36 |
| Citibank | 23408682 | 27,706.78 | 20,256.78 |
| Citibank | 23408658 | 55,231.96 | 44,931.96 |
| Total | | | 84,653.44 |

Plus:
  Self-employment income originally
    reported as wages                              $4,084.00
      Total income                                             $88,737.44

Less:
  Net W-2 wages (Mrs. Zuckerman)                   (16,423.19)
  Self-employment earnings reported as wages        (4,084.00)
  Gambling winnings (Mrs. Zuckerman)                (2,000.00)
      Total income accounted for                              (22,507.19)
      Unreported income                                        66,230.25

---

[2]After checking Dickoff's work papers against the bank statements for the six identified accounts, we are satisfied that the deposit amounts he computed are correct.  Owing to a clerical error, the work papers misstate the interest earned for one of the accounts, but the discrepancy amounts to only 10 cents and does not affect the computation of deposits.

Dickoff requested documents from petitioner relating to the sources of unexplained deposits, but petitioner did not provide them. Petitioner did not apprise Dickoff of any loans or inheritances that might have accounted for some of the deposits. Dickoff did not attempt to obtain copies of the Zuckermans' canceled checks from the banks to ascertain whether they may have made or received any loans in 1987. Owing, inter alia, to petitioner's refusal to extend the limitations period for assessment, Dickoff concluded that the time remaining to complete his investigation and analysis was insufficient.

In the notice of deficiency issued to petitioner and Mrs. Zuckerman on March 3, 1993, respondent increased the Zuckermans' gross income for 1986 by the $65,000 that petitioner had misappropriated from Lawrence, increased their gross income for 1987 by the $66,230 of unexplained bank deposits, increased their gross income for both years to reflect amounts of unreported interest and dividends shown on Forms 1099, and disallowed in whole or in part certain deductions claimed on Schedules A and C for interest, taxes, and other expenses which the Zuckermans had not adequately substantiated. A petition signed in both spouses' names was timely filed.

On August 16, 1994, the Court granted a motion by respondent to compel production of documents and answers to interrogatories relating to all substantive issues in the case and advised the

Zuckermans of the likelihood of sanctions under Rule 104(c) in the event of noncompliance. Petitioner sought an extension to obtain some of the documents from his banks. He offered no satisfactory explanation for his failure to produce numerous other documents requested by respondent and for his failure to answer any of the interrogatories. Nevertheless, the Court granted petitioner's request. Following the expiration of the extended deadline and a conference with petitioner and respondent's counsel, the Court concluded that petitioner was not attempting to cooperate in good faith. Accordingly, on motion by respondent for sanctions under Rule 104(c), by order dated November 4, 1994, the Court prohibited the Zuckermans from introducing any documentary or testimonial evidence pertaining to matters addressed in respondent's discovery requests. Mrs. Zuckerman took no part in these pretrial proceedings, having received no actual notice of them despite respondent's efforts to contact her.

At trial petitioner revealed that he had signed his wife's name to the 1986 return and, without her knowledge, to the petition as well. Mrs. Zuckerman testified that she had not intended to file a joint return with her husband for either year. In response to these disclosures, on motion by respondent, the case was dismissed for lack of jurisdiction with respect to Mrs. Zuckerman, the caption of the case was changed, and respondent amended her answer to recompute petitioner's tax

liability for 1987 without regard to items attributable to Mrs. Zuckerman and using rates applicable to married persons filing separately. The deficiency and additions to tax recomputed in this manner are higher than those set forth in the notice of deficiency:

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6661 |
| 1987 | $31,702 | $7,950 | $1,590 | [1] | $7,926 |

[1]Fifty percent of the interest due on $31,702.

The increase in the deficiency results in large part from respondent's assumption that the $18,423 of reported wage and gambling income attributable to Mrs. Zuckerman was not the source of any of the total $84,653 of deposits to petitioner's bank accounts during the year, from which respondent concluded that petitioner had $18,423 more unreported income than she had originally determined. In her amended answer, respondent did not recompute the deficiency and additions to tax for the 1986 taxable year.

                              OPINION

    Respondent's determinations in the notice of deficiency are presumed to be correct, and petitioner has the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, respondent has the burden of proving the

increase in the deficiency for 1987 attributable to the amendments to respondent's answer.  Rule 142(a).

Embezzlement Income

Section 61 defines gross income as income from whatever source derived.  Property is includable in gross income when, by lawful or unlawful means, the taxpayer gains complete dominion and control over it, thereby realizing an economic benefit. United States v. Curtis, 782 F.2d 593, 595-596 (6th Cir. 1986); Davis v. United States, 226 F.2d 331, 334 (6th Cir. 1955). Income realized through embezzlement must be reported in the year of receipt, even though restitution may be required in a later year.  James v. United States, 366 U.S. 213, 219-220 (1961).  The evidence establishes that petitioner received Lawrence's three checks for $65,000 under false pretenses and converted them to his own use by depositing them into bank accounts over which he exercised complete dominion and control.  His disposition of the funds entrusted to him was plainly inconsistent with the pretense that he possessed them as authorized agent of CEA.  Consequently, these funds constitute taxable income to him for 1986.

Petitioner contends that, inasmuch as he has never been charged with or convicted of embezzlement, respondent may not treat the funds he received from Lawrence as embezzlement income. The decision of the district attorney for Nassau County to charge petitioner with crimes other than embezzlement is likely to have

been influenced by factors that have no relevance to this case, such as applicable statutes of limitations and the exacting burden of proof on the government in criminal cases. Whether or not petitioner could have been convicted of the crime of embezzlement, he has failed to prove that he did not acquire complete dominion and control over the funds he received from Lawrence so as to realize income for tax purposes.

Petitioner points out that some interest was paid to Lawrence on the funds he received from her. He appears to reason from this fact either or both of the following: (i) The payment of interest proves that he treated the funds as a loan during the years at issue; or (ii) even if he did convert the funds to his own use and thereby realize income, his income for the years at issue should be reduced by the amount of interest payments he made. Neither argument has merit.

First, the pattern of interest payments is not inconsistent with the conclusion that he embezzled. Payments of interest would have been calculated to reassure Lawrence in furtherance of the fraud. The only interest payments by petitioner during the years at issue that are specifically confirmed by the record are the first three payments at most. Lawrence testified that it was these initial scheduled interest payments that induced her to write the second and third checks.

Second, the evidence does not establish that petitioner made any interest payments to Lawrence with his own funds during the years at issue. Her testimony implies that the initial scheduled payments that she received were drawn on CEA's account. Subsequent interest checks were drawn on petitioner's personal account, but many of these were returned for insufficient funds. Petitioner did not prove that any checks payable to Lawrence from his own account cleared during the years at issue.

Bank Deposits

Section 6001 requires each taxpayer to maintain records sufficient to establish the amount of his gross income and deductions. Where a taxpayer fails to keep adequate records, the Commissioner is authorized by section 446(b) to reconstruct his income by any reasonable method. Petzoldt v. Commissioner, 92 T.C. 661, 687, 693 (1989). Use of the bank deposits method for reconstructing income is well established. DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Under the bank deposits method there is a rebuttable presumption that all funds deposited to a taxpayer's bank account constitute taxable income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964); Hague Estate v. Commissioner, 132 F.2d 775, 777-778 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); DiLeo v. Commissioner, supra at 868. The

Commissioner must take into account any nontaxable sources of deposits of which she is aware in determining the portion of the deposits that represent taxable income, but she is not required to trace deposits to their source. Petzoldt v. Commissioner, supra 695-696; Estate of Mason v. Commissioner, supra at 657.

Petitioner argues that respondent could not properly conclude that deposits to his bank accounts during 1987 represented taxable income without verifying the sources of the deposits. Petitioner suggests that if the revenue agent had obtained petitioner's canceled checks from the banks, the information they provided as to the purposes for petitioners' withdrawals might have indicated nontaxable loan proceeds or loan repayments as the source of some deposits. To the extent that petitioner bears the burden of proof, respondent was fully justified in assuming that the sources of unexplained deposits were taxable income. If respondent did not identify the sources of funds, it was because petitioner failed to provide documentation requested by the revenue agent and would not consent to extend the limitations period for assessment to enable the agent to continue his investigation and analysis. Petitioner did not advise respondent during the audit or pretrial discovery phases of the case that he had received any nontaxable funds, and the Court's order of November 4, 1994, barred petitioner from offering any evidence thereof at trial. Respondent's

determination in the notice of deficiency that petitioner had $66,230 of unreported income for 1987 is accordingly sustained.

In the amended answer respondent asserted that the amount of petitioner's unreported income for 1987 should be increased to $84,653. The asserted increase of $18,423 is equal to income reported as Mrs. Zuckerman's. Respondent, in her amended answer, allowed no credit to petitioner for the amount of this reported income because respondent assumed that the bank accounts analyzed by the revenue agent were used solely for the deposit of petitioner's own funds. Respondent did not attempt to confirm the accuracy of this assumption, and there is reason for skepticism. Two of the six accounts included in the analysis were titled as joint accounts of both spouses, to which Mrs. Zuckerman would naturally have had access. Because respondent's assertion of an increased amount of unreported income results in an increase in the deficiency, respondent bears the burden of proof on this point. Rule 142(a). Respondent has failed to carry that burden. We therefore reject the deficiency asserted in respondent's amended answer insofar as it includes in petitioner's gross income amounts equal to Mrs. Zuckerman's wages and gambling winnings.

<u>Other Issues Bearing on Tax Liabilities</u>

Pursuant to section 6001 petitioner was obligated to maintain records to substantiate his income and deductions. He

failed to produce documents and provide answers to interrogatories to explain why he reported less interest and dividends for 1986 and 1987 than the amounts shown on the Forms 1099 issued by his payers, or to support his claim to deductions in excess of the amounts allowed by respondent on audit.  By order of this Court, he was accordingly denied the opportunity to present any such evidence at trial.  Where it is clear from the record that deductible expenses were incurred, but the taxpayer cannot prove the exact amount thereof, under some circumstances the Court may estimate.  Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930).  The so-called Cohan rule has no application, however, where, as here, the record lacks any basis for estimation.  Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  Respondent's determinations are therefore sustained.

Additions

Section 6651(a)(1) imposes an addition to tax for failure to file a timely return, unless it is shown that the failure was due to reasonable cause and not to willful neglect.  The addition to tax is calculated as a percentage of the amount of tax required to be shown on the return, reduced by any part of this tax liability that was paid within the prescribed time period.  Sec. 6651(b).  Petitioner filed his return for 1986 3 years late.  The Form 1040 he filed for 1987 was not signed under penalty of

perjury in accordance with section 6065.  Under well-settled law, the unsigned form does not constitute a valid return, and hence petitioner filed no return for 1987.[3]  Lucas v. Pilliod Lumber Co., 281 U.S. 245, 248-249 (1930); Dixon v. Commissioner, 28 T.C. 338, 346-348 (1957); Plunkett v. Commissioner, 41 B.T.A. 700 (1940), affd. 118 F.2d 644 (1st Cir. 1941).  Petitioner made no payments prior to the due date for his returns.  Federal income tax withheld from Mrs. Zuckerman's wage income appears to have been properly credited entirely to her in respondent's determination of her separate deficiency.  Therefore, in the absence of excuse for petitioner's delinquencies, the addition to tax would apply to the full amount of his tax liability for each year, at the maximum statutory rate of 25 percent.  Sec. 6651(a)(1) and (b).

Section 6653(a) imposes additions to tax if any part of an underpayment is due to negligence or intentional disregard of

---

[3]Respondent treated the Form 1040 for 1987 as a valid Federal income tax return, and in these proceedings took the position that petitioner had adopted the Form 1040 as his return by stipulation.  Neither respondent's acceptance of the Form 1040 nor petitioner's attempt to adopt it--if in fact that was his intent--would have been effective to waive the statutory requirement.  Lucas v. Pilliod Lumber Co., 281 U.S. 245, 248-249 (1930); Dixon v. Commissioner, 28 T.C. 338, 343-344, 347-348 (1957); Hammann v. Commissioner, T.C. Memo. 1987-260. Nevertheless, inasmuch as the Form 1040 was not filed until nearly 2 years after it was due, the addition to tax under sec. 6651(a)(1) is the same--the 25-percent maximum rate provided-- whether or not petitioner is treated as having filed a valid return.

rules and regulations.  Sec. 6653(a)(1)(A) and (B).  An underpayment for purposes of this section is the excess of the amount of tax required to be shown on the return over the amount of tax shown on the return, except that where a return is not filed within the prescribed time period any amount of tax shown on the return is disregarded.  Sec. 6653(c)(1).  Negligence is defined as the lack of due care or failure to do what an ordinarily prudent person would do under the circumstances. Marcello v. Commissioner, 380 F.2d 494, 506 (5th Cir. 1967), affg. in part and revg. and remanding in part 43 T.C. 168 (1964). The failure to file timely returns without reasonable cause and the failure to maintain adequate records to substantiate the taxpayer's income and deductions each constitute negligence or disregard of rules and regulations.  Sullivan v. Commissioner, 985 F.2d 704, 706 (2d Cir. 1993), affg. in part and revg. in part on another issue T.C. Memo. 1991-492; Crocker v. Commissioner, 92 T.C. 899, 917 (1989); Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990).

The addition to tax under section 6661 applies to any underpayment of tax that is attributable to a substantial understatement.  An understatement is generally defined as the excess of the amount of tax required to be shown on the return over the amount of tax shown on the return.  Sec. 6661(b)(2)(A). If no valid return is filed for the taxable year, the amount of

the understatement is the full amount of the tax imposed.  Mosher
v. Commissioner, 927 F.2d 599 (5th Cir. 1991), affg. without
published opinion T.C. Memo. 1989-157; Hesselink v. Commissioner,
97 T.C. 94 (1991); sec. 1.6661-2(d)(2), Income Tax Regs.  An
understatement is substantial if it exceeds the greater of 10
percent of the amount of tax required to be shown or $5,000.
Sec. 6661(b)(1)(A).  The underpayment for purposes of section
6661 is determined by subtracting from the understatement any
withholding credits to which the taxpayer is entitled.  Woods v.
Commissioner, 91 T.C. 88, 92-99 (1988).  In petitioner's case, no
withholding credits apply, there is an underpayment equivalent to
the understatement, and the understatement is substantial for
each taxable year.  For 1986, the underpayment and understatement
equal the amount of tax imposed less the $199 liability reported;
for 1987 the underpayment and understatement equal the full
amount of the tax imposed.[4]

Petitioner offered no evidence or explanations on brief for
his failure to file timely income tax returns for 1986 and 1987,
for his failure to report income and deductions accurately, or

---

[4]Consistent with her treatment of the Form 1040 for 1987 as
a valid return, respondent granted petitioner credit for $98
shown as tax on the form in computing the understatement.  As
explained above, such treatment is more favorable than is
warranted under established law.  However, the benefit conferred
by this treatment amounts to less than $25 ($98 x 25%, the
applicable rate for additions to tax assessed after Oct. 21,
1986.  Pallottini v. Commissioner, 90 T.C. 498 (1988)).

for his lack of adequate records.  He has advanced no arguments to challenge respondent's determinations of additions to tax. Consequently, he is deemed to have conceded them.  Rule 149(b); Murphy v. Commissioner, 103 T.C. 111, 119 (1994); Rothstein v. Commissioner, 90 T.C. 488, 497 (1988).  The additions to tax are sustained for both years, subject to computational adjustments under Rule 155.

For 1986, the deficiency and additions to tax must be computed by reference to petitioner's separate tax liability, determined without regard to items attributable to Mrs. Zuckerman and using rates applicable to married persons filing separately. For 1987, respondent has failed to satisfy her burden of proving the $18,423 increase in unreported income asserted in her amended answer and the correspondingly higher deficiency.  The additions to tax must be revised accordingly.  For all relevant purposes, petitioner is to be treated as having filed no return for 1987.

To reflect the foregoing,

Decision will be entered

under Rule 155.