GLORIA MAE HAMMANN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hammann v. Commissioner
Docket No. 42227-84.
United States Tax Court
T.C. Memo 1987-260; 1987 Tax Ct. Memo LEXIS 260; 53 T.C.M. (CCH) 884; T.C.M. (RIA) 87260; May 21, 1987. *260 Respondent received an unsigned and unverified Form 1040 that purported to be the joint 1980 Federal income tax return of petitioner and her former husband. Respondent treated the purported return as the joint 1980 Federal income tax return of petitioner and her former husband and, based thereon, determined a deficiency in petitioner's Federal income tax. Held, the purported return is not a valid Federal income tax return. Held further, petitioner therefore received unreported income in 1980. Held further, petitioner is liable for additions to tax pursuant to secs. 6651(a)(1) and 6653(a), I.R.C. 1954. Gloria M. Hammann, pro se. Arlene A. Blume, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Chief Judge: By notice of deficiency dated September 21, 1984, respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1980 in the amount of $35,019.47. The first issue we must decide is whether an unsigned Federal income tax return form (Form 1040) that purports to be the joint 1980 Federal income tax return of petitioner and her former husband is in fact their return. If we decide that the unsigned Form 1040 is the joint *261 1980 Federal income tax return of petitioner and her former husband, we must then decide (1) whether interest income is underreported on the return, and (2) whether respondent properly disallowed a casualty loss claimed on the return. On the other hand, if we decide that the unsigned Form 1040 is not the joint 1980 Federal income tax return of petitioner and her former husband, we must then decide (1) whether petitioner failed to report income that she received in 1980, and (2) whether petitioner is liable for additions to tax pursuant to sections 6651(a)(1) [1] and 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner Gloria M. Hammann (hereinafter petitioner) and Frederick G. Hammann (hereinafter Frederick) were married in December of 1977 and divorced in December of 1982. They filed separate Federal income *262 tax returns for 1977, but filed joint Federal income tax returns for 1978 and 1979. Petitioner filed a separate Federal income tax return for 1981. At the time the petition was filed in this case, petitioner resided in Bel Air, Maryland. Beginning in 1977, petitioner and Frederick jointly owned Seaworld, Inc. (hereinafter Seaworld), a corporation that operated a fish stall in the Baltimore Fish Market. Petitioner owned 50 percent of Seaworld's stock and served as the corporation's office manager and bookkeeper. Petitioner also discussed Seaworld's operation and the preparation of its tax returns with employees of McGrow, Pridgeon & Company, P.A. (hereinafter McGrow Pridgeon), the accounting firm employed by Seaworld to do its accounting work and prepare its tax returns. McGrow Pridgeon also prepared the joint 1978 and 1979 Federal income tax returns of petitioner and Frederick. On March 10, 1981, petitioner and Frederick met with Richard Pridgeon (hereinafter Richard), the president of McGrow Pridgeon, to discuss the preparation of their 1980 individual income tax return. At that meeting, Richard, petitioner, and Frederick did not discuss the preparation of separate individual *263 income tax returns for petitioner and Frederick, but limited their discussion to the preparation of a joint Federal income tax return. During the meeting, Richard requested additional information concerning interest income, dependents, and a loss due to theft, and petitioner provided the requested information on March 16, 1981. Richard prepared a joint 1980 Federal Form 1040 for petitioner and Frederick (hereinafter referred to as either the 1980 Form 1040 or simply the Form 1040), and mailed or otherwise delivered it to petitioner or Frederick on June 16, 1981. On June 22, 1981, petitioner and Frederick executed an Application for Extension of Time to File U.S. Individual Income Tax Return (Form 2688). On July 1, 1981, the 1980 Form 1040 and the executed Form 2688 were filed with the Office of the Internal Revenue Service in Philadelphia, Pennsylvania. The 1980 Form 1040 was signed by Richard as the person who had prepared it, but neither petitioner nor her husband, Frederick, signed it. The Form 1040 shows a filing status of "married filing joint return," and claims exemptions for petitioner, Frederick, and Frederick's son, Michael. The Form 1040 reports wages of $37,328.36 *264 paid to petitioner during 1980 by Seaworld, and wages of $165,075 paid to Frederick during 1980 by Seaworld. The Form 1040 also reports interest income in the amount of $240, claims a casualty loss in the amount of $70,035, and shows a refund due in the amount of $19,514. Affixed to the Form 1040 is an Internal Revenue Service mailing label showing the names, addresses, and social security numbers of petitioner and Frederick. Respondent treated the 1980 Form 1040 as the joint Federal income tax return of petitioner and Frederick. Pursuant to the Form 1040, the United States Treasury issued a tax refund check payable jointly to petitioner and Frederick in the amount of $19,514. In September of 1981, petitioner signed her name and Frederick's name to the check and deposited it in her bank account. During 1980, Seaworld paid petitioner wages in the amount of $37,328.36, and petitioner earned interest on a separate bank account in the amount of $735. Also during 1980, petitioner and Frederick earned interest on joint bank accounts in the amount of $913. Petitioner did not file a separate Federal income tax return for 1980. The deficiency in this case was based on the 1980 Form 1040. *265 In his notice of deficiency, respondent determined that interest income was underreported on the Form 1040 in the amount of $678, and he disallowed the $70,035 casualty loss claimed on the Form 1040. OPINION We must decide whether the 1980 Form 1040 is the joint Federal income tax return of petitioner and Frederick. Petitioner argues that the 1980 Form 1040 is not her return because she did not sign it and never intended to file a joint Federal income tax return with Frederick for 1980. Respondent takes the position that, although the 1980 Form 1040 was not signed and verified by either petitioner or Frederick, it was proper for him to treat the 1980 Form 1040 as petitioner's Federal income tax return because "petitioner's activities surrounding the filing of the * * * return overwhelm her * * * statements that she never intended to file that return." [2] For the reasons set forth below, we find for petitioner on this issue. A Form 1040 that is not signed and verified, that is, signed under penalties of perjury, does not constitute a valid Federal income tax *266 return. , affd. without published opinion ; , revd. on other grounds ; . Consequently, the 1980 Form 1040, which was not signed and verified by either petitioner or Frederick, is neither the joint return of petitioner and Frederick nor the separate return of either of them. [3]
Respondent's argument that the 1980 Form 1040 is the joint Federal income tax return of petitioner and Frederick because they intended the document to be their joint return for 1980 is without merit. It is true that where a valid "income tax return is intended by both spouses as a joint return, the absence of the signature of one spouse does not prevent their intention from being realized." Estate of (emphasis added). However, respondent does *267 not cite any decision where, in a situation similar to the one presented here, an unsigned and unverified Form 1040 was held to be a valid Federal income tax return, nor have we found such a decision. To the contrary, our precedents firmly establish that an unsigned and unverified Form 1040 is no return at all. ; ; . [4]
Having decided that the 1980 Form 1040 is not a valid Federal income tax return, we must now decide (1) whether petitioner received any income in 1980, and (2) whether petitioner is liable for additions to tax for 1980 pursuant to sections 6651(a)(1) and 6653(a). [5] Respondent bears the burden of proof with respect to these issues, having raised *268 them for the first time in his trial memorandum. Rule 142(a); see . [6] At trial, petitioner conceded that during 1980 she was paid wages by Seaworld in the amount of $37,328.36, and that she did not file a Federal income tax return for 1980. In addition, the parties have stipulated that petitioner earned interest on a separate bank account in 1980 in the amount of $735. Accordingly, we find that petitioner failed to report income that she received in 1980 in the amount of $38,063.36 ($37,328.36 plus $735). [7] *269 Respondent also contends that petitioner is liable for additions to tax for 1980 pursuant to sections 6651(a)(1) and 6653(a). We agree. Section 6651(a)(1) imposes an addition to tax for failure to timely file a return, unless it is shown that such failure was due to reasonable cause and not willful neglect. [8] *270 This addition is based on a percentage of the amount required to be shown as tax on the return, which is reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax. [9] Section 6653(a) imposes an addition to tax if any part of an underpayment is due to negligence or intentional disregard of rules and regulations. [10] *271 The addition is equal to 5 percent of the underpayment for the year, and where a return has not been filed, the amount of the underpayment is generally equal to the tax imposed. [11]
The record establishes that petitioner's failure to file a 1980 return was not due to reasonable cause and was due to willful neglect, and that any underpayment of tax that resulted from petitioner's failure to file a 1980 return was due to intentional disregard of rules and regulations. Petitioner is an astute businesswoman who was actively engaged in the operation and management of Seaworld. She served as Seaworld's office manager and bookkeeper, and discussed the preparation of Seaworld's tax returns with Seaworld's accountants. Moreover, petitioner had filed income tax returns for years prior to 1980 and for 1981, and she met with her accountant and former husband to discuss the preparation of her 1980 Federal income tax return. Petitioner also signed an application for extension of time to file her 1980 return. These facts clearly show that petitioner was aware of her duty to timely file a Federal income tax return for 1980 and convey a strong inference that her failure to do so was not due *272 to reasonable cause and was due to willful neglect, and that any underpayment of tax that resulted from petitioner's failure to timely file a 1980 return was due to intentional disregard of rules and regulations. Petitioner offered no explanation as to why she did not timely file a 1980 return. Considering all the evidence in the record, we conclude that petitioner's failure to timely file a 1980 Federal income tax return was not due to reasonable cause and was due to willful neglect, and that any underpayment of tax that resulted from petitioner's failure to timely file a 1980 return was due to intentional disregard of rules and regulations. It follows that petitioner is liable for additions to tax for 1980 pursuant to sections 6651(a)(1) and 6653(a). We hold that (1) the 1980 Form 1040 is not a valid Federal income tax return; (2) petitioner failed to report income that she received in 1980 in the amount of $38,063.36; (3) petitioner is liable for an addition to tax for 1980 pursuant to section 6651(a)(1); [12] *273 and (4) petitioner is liable for an addition to tax for 1980 pursuant to section 6653(a). [13]
Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all sections referred to are sections of the Internal Revenue Code of 1954 as amended and in effect during the year in question, and all rules referred to are rules of the Tax Court Rules of Practice and Procedure.↩
2. Respondent does not argue that petitioner is estopped from denying that the 1980 Form 1040 is her Federal income tax return.↩
3. Respondent does not argue that the signatures of petitioner and Frederick on the Application for Extension of Time to File U.S. Individual Income Tax Return (Form 2688) can be deemed to be signatures on the 1980 Form 1040 itself.↩
4. , does not suggest a contrary result. In that case, the taxpayer did not argue, as petitioner argues here, that the document in question was not his return, and the Commissioner did not argue that the document was not a valid return. As a result, the only issue presented to the Court in Ripportella↩ was whether the document in question was a separate or a joint return.
5. It is clear that we have jurisdiction to redetermine petitioner's separate income tax liability for 1980, even though the deficiency in this case was based on an invalid tax return. See . ↩
6. See also ; .↩
7. The parties also have stipulated that during 1980 petitioner and Frederick earned interest on joint bank accounts in the amount of $913. We already have noted that respondent bears the burden of proving that petitioner failed to report income that she received in 1980. Respondent has failed to carry that burden with respect to the interest earned on the joint bank accounts because, on the record before us, we are unable to determine how much of this interest, if any, is allocable to petitioner.
8. Section 6651(a)(1) provides, in pertinent part, as follows: (a) Addition to the Tax. -- In case of failure -- (1) to file any return * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; * * * ↩
9. Sec. 6651(b)(1) provides: (b) Penalty Imposed on Net Amount Due. -- For purposes of -- (1) subsection (a)(1), the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed on the return, * * *↩
10. Sec. 6653(a) provided during the year in issue as follows: (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income, Gift, or Windfall Profit Taxes. -- If any part of any underpayment (as defined in subsection (c)(1)) * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. 11. See sec. 6653(c)(1).↩
12. This holding necessarily assumes that some or all of the tax required to be shown on petitioner's 1980 Federal income tax return was not paid on or before the date prescribed for payment. The record does not disclose whether this assumption is true. If petitioner paid all of the tax required to be shown on her 1980 Federal income tax return on or before the date prescribed for payment, this fact can be brought to our attention in the computation under Rule 155, and petitioner would not be liable for an addition to tax pursuant to section 6651(a)(1). See notes 8 and 9, supra↩ and accompanying text. 13. Petitioner does not contend that she is entitled to any deductions for 1980.↩