T.C. Memo. 1999-426


UNITED STATES TAX COURT


NATHAN T. OLPIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10437-99.                    Filed December 30, 1999.


<u>W. Kevin Jackson</u>, for petitioner.

<u>Pamela J. Sewell</u>, for respondent.


MEMORANDUM OPINION


DEAN, <u>Special Trial Judge</u>:    This case is before us on
petitioner's motion for summary judgment and respondent's cross-
motion for summary judgment filed pursuant to Rule 121.  Unless
otherwise indicated, section references are to the Internal

Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $6,092 in petitioner's 1995 Federal income tax based on a finding that petitioner had not filed a valid 1995 Federal income tax return and that petitioner's proper filing status was married filing separately. Petitioner resided in Salt Lake City, Utah, at the time he filed his petition.

Petitioner moves for summary judgment in his favor, arguing that as a matter of law, he filed a valid 1995 joint Federal income tax return with his former spouse and that he is entitled to joint filing status.  Respondent initially objected to petitioner's motion, arguing that there was a genuine issue of fact regarding the intent of petitioner's former spouse to file a joint return.  Both parties agreed, however, during a subsequent conference call with the Court that there are no genuine issues of material fact with respect to the issue of whether petitioner filed a valid 1995 Federal income tax return.  Respondent filed a cross-motion for summary judgment focusing on the requirements of a valid return.

The sole issue presented for summary judgment is whether petitioner filed a valid 1995 Federal income tax return.

Although there has been no stipulation of facts, we set forth a summary of facts relevant to our discussion, which from

the pleadings, affidavits, and the parties' memoranda in support of their motions do not appear to be in dispute. We treat these facts as true only for purpose of ruling on the motions.

Background

Petitioner and his former spouse, Susan Olpin (now known as Susan Stroup but hereafter referred to as Mrs. Olpin), were legally married throughout 1995 and were divorced on September 5, 1996. Petitioner and Mrs. Olpin filed and obtained two extensions of time to file their 1995 return.[1] On October 15, 1996, a Form 1040 was sent to the Internal Revenue Service (IRS) which petitioner argues is a joint 1995 Federal income tax return (the purported return). The purported return was not signed by either petitioner or Mrs. Olpin but was signed by their tax preparer. Respondent initially processed the purported return as a joint Federal income tax return for petitioner and Mrs. Olpin for the 1995 tax year, and petitioner made payments totaling $4,560.93 to satisfy the liability reflected on the purported return.

---

[1] Respondent's answer to petitioner's petition admitted petitioner's allegation that he and his ex-wife obtained an extension for filing for the 1995 tax year on Form 4868 and an additional extension by filing Form 2688. Although respondent denied this allegation in his response to petitioner's motion for summary judgment, respondent has not sought to amend his answer admitting this fact, and respondent's memorandum in support of respondent's motion for summary judgment acknowledges that time extensions were requested by petitioner and granted by the IRS. See Rules 36, 41.

The IRS' tax account transcripts for the 1995 tax year originally recorded the receipt of the purported return as the filing of a joint income tax return by petitioner and Mrs. Olpin. The IRS, however, on or about September 14, 1998, "reversed" its original processing of the purported return to reflect that a valid return was not filed by petitioner.

Although Mrs. Olpin stated in a sworn affidavit that in 1996 she intended to file a joint income tax return with petitioner for tax year 1995, Mrs. Olpin signed and filed an individual Federal income tax return with a filing status of married filing separately for tax year 1995 on or about February 9, 1998. In her affidavit, Mrs. Olpin explained that during the course of a chapter 13 bankruptcy proceeding that she initiated, the IRS filed a proof of claim asserting a tax liability for the 1995 tax year. Mrs. Olpin further explained that the proof of claim was based upon unreported income for Nathan Olpin and upon an unsigned joint tax return for the year in issue. Mrs. Olpin's affidavit also stated that because she had no independent knowledge of petitioner's income and had not seen the unsigned tax return, she signed and filed a separate 1995 individual Federal income tax return at the suggestion of the IRS.

Petitioner nevertheless contends that he and Mrs. Olpin filed a valid joint Federal income tax return for the 1995 tax year. He argues that the subsequent filing of a separate Federal

- 5 -

income tax return by Mrs. Olpin was not valid because Mrs. Olpin had already filed a joint return with petitioner. According to petitioner, Mrs. Olpin was unlawfully advised to file the tax return during the bankruptcy proceeding. On the basis of these contentions, petitioner concludes that no adjustments may be properly made to his filing status for the 1995 tax year. Petitioner agrees that all issues turn on whether he filed a valid 1995 Federal income tax return.

Respondent argues that summary judgment in favor of the IRS is appropriate because there are no genuine issues of material fact with respect to whether petitioner filed a valid 1995 Federal income tax return and that as a matter of law petitioner did not file a valid return.

Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. See Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). A motion for summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753,

754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of showing that there is no genuine issue of material fact, and factual inferences are viewed in the light most favorable to the nonmoving party. See Preece v. Commissioner, 95 T.C. 594, 597 (1990). The existence of any reasonable doubt as to a material fact will result in denial of the motion for summary judgment. See Hoeme v. Commissioner, 63 T.C. 18, 20 (1974). A fact is material if it "'tends to resolve any of the issues that have been properly raised by the parties.'" Boyd Gaming Corp. v. Commissioner, 106 T.C. 343, 347 (1996)(quoting 10A Wright et al., Federal Practice and Procedure: Civil, sec. 2725, at 93 (2d ed. 1983)). Where both parties move for summary judgment, each motion must be examined to determine whether it has been established that there is no genuine issue as to any material fact and that a decision may be entered as a matter of law. See Take v. Commissioner, 82 T.C. 630, 633 (1984), affd. 804 F.2d 553 (9th Cir. 1986).

We agree with the parties that there are no material facts at issue with regard to whether petitioner filed a valid 1995 Federal income tax return. Having determined that this is a proper case for summary judgment, we focus on the legal requirements of what constitutes a Federal income tax return.

Section 6011(a) provides that "any person made liable for any tax * * * shall make a return * * * according to the forms

and regulations prescribed by the Secretary." A return required to be filed "shall contain or be verified by a written declaration that it is made under the penalties of perjury." Sec. 6065. Section 6061 provides the general rule that "any return, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary." The regulations promulgated under section 6061 require that "Each individual * * * shall sign the income tax return required to be made by him, except that the return may be signed for the taxpayer by an agent who is duly authorized in accordance with paragraph (a)(5) or (b) of section 1.6012-1 to make such return." Sec. 1.6061-1(a), Income Tax Regs. The signature of petitioner's tax preparer does not qualify, nor does petitioner suggest that it qualifies, as the signature of a duly authorized agent as described by the regulations.

The law is well settled that a Form 1040 that is not duly signed and verified under penalties of perjury does not constitute a valid Federal income tax return. See Elliott v. Commissioner, 113 T.C. 125, 128 (1999); Richardson v. Commissioner, 72 T.C. 818, 823 (1979); Cupp v. Commissioner, 65 T.C. 68, 78-79 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977); Vaira v. Commissioner, 52 T.C. 986, 1005 (1969), revd. on other grounds 444 F.2d 770 (3d Cir. 1971);

Reaves v. Commissioner, 31 T.C. 690, 713 (1958), affd. 295 F.2d 336 (5th Cir. 1961); Dixon v. Commissioner, 28 T.C. 338, 346-348 (1957).

Petitioner acknowledges the "traditional general" rule requiring signatures on tax returns but contends that the unsigned 1040 Form sent to the IRS for tax year 1995 is a valid return because both he and his former spouse intended to file a joint return, and they inadvertently failed to sign the purported return. Petitioner relies on two arguments: (1) Recent Federal law has eliminated the manual signature requirement, and (2) the facts of this case fall within an exception to the general rule requiring tax returns to be signed.[2]

---

[2]   Petitioner also suggests that the IRS is required to abide by its initial processing of the purported return as the joint return of petitioner and Mrs. Olpin. The IRS' processing of the purported return and its acceptance of petitioner's payments of the tax liability reflected on the form, however, can not cure the absence of a signature. See Lucas v. Pilliod Lumber Co., 281 U.S. 245 (1930)(finding that no IRS officer had the power to override the requirement that a tax return be signed for purposes of the statute of limitations); Vaira v. Commissioner, 52 T.C. 986, 1004 (1969), revd. on other issues 444 F.2d 770 (3d Cir. 1971); Smart v. Commissioner, T.C. Memo. 1987-279.

Although there is a case suggesting that the actions of the IRS may constitute "acceptance" of an unsigned return, the present case is distinguishable. In Dowell v. Commissioner, 614 F.2d 1263, 1266-1267 (10th Cir. 1980), vacated and remanded 465 U.S. 1001 (1984), the Court of Appeals for the Tenth Circuit determined that the IRS, in relying on unsigned amended tax returns to convict taxpayers of willfully filing fraudulent returns and to determine additional taxes due, had "accepted" the amended returns and could no longer argue that there was no limitation period for assessment of tax shown on the original

(continued...)

Petitioner asserts that in recent years, the manual signature requirement has become more relaxed and that section 6061(b) eliminates the requirement. Petitioner cites no authority to support his contention that the law is becoming more relaxed regarding the signing and verification of tax returns. As evidenced by our recent ruling in Elliott v. Commissioner, supra, failure to satisfy the signature requirement remains fatal to the validity of a return. Furthermore, section 6061(b) has not eliminated the requirement.

Assuming arguendo that section 6061(b) pertains to a notice of deficiency filed on May 21, 1999, for the 1995 taxable year,[3] it is clear on the face of the statute that it applies only to

---

[2](...continued)
returns. On remand, the Court of Appeals did not address the issue of whether the IRS' treatment of an unsigned tax form could constitute "acceptance". See Dowell v. Commissioner, 738 F.2d 354 (10th Cir. 1984). In contrast to the situation in Dowell where the Commissioner did not challenge the efficacy of the amended returns except with respect to the statute of limitations issue, the Commissioner in the instant case determined that the form filed by petitioner is not a return.

[3] Sec. 6061(b) was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 2003(a)(1), 112 Stat. 685, 724, effective on July 22, 1998. It is not clear for what taxable years the statute authorizes the Secretary to waive signature requirements for electronic filings. The legislative history suggests that the authority may apply only to taxable years beginning after Dec. 31, 1998. See S. Rept. 105-174 (1998) ("The provision requires the Secretary to establish procedures, to the extent practicable, to receive all forms electronically for taxable periods beginning after December 31, 1998.").

electronic filings.  Section 6061(b), titled "ELECTRONIC SIGNATURES", provides that "The Secretary shall develop procedures for the acceptance of signatures in digital or other electronic form."  It authorizes the Secretary to "waive the requirement of a signature" until such procedures are in place. Sec. 6061(b)(1)(A).  If there were any doubt, however, as to the application of the statute, it is clear from its legislative history that section 6061(b) was promulgated to promote paperless electronic filing by eliminating the need to file a paper form with a manual signature in addition to the electronic filing. See S. Rept. 105-174 (1998).  Furthermore, even if section 6061(b) did authorize the Secretary to waive the signature requirement for any tax return, the language of the statute is discretionary and does not require such a waiver.

Petitioner's second argument that the purported return is a valid 1995 Federal income tax return because he and his former spouse intended it to be their joint return at the time of filing also is without merit.  We have long held that if an "income tax return is intended by both spouses as a joint return, the absence of the signature of <u>one</u> spouse does not prevent their intention from being realized."  <u>Estate of Campbell v. Commissioner</u>, 56 T.C. 1, 12 (1971) (emphasis added); see <u>Ebeling v. Commissioner</u>, T.C. Memo. 1994-277, affd. without published opinion 76 F.3d 385 (9th Cir. 1996); <u>Hammann v. Commissioner</u>, T.C. Memo. 1987-260.

We thus have carved out an exception to the general rule that a tax return must be signed by both spouses in order for the return to constitute a joint return if one spouse has signed the return and if the nonsigning spouse intended the return to be a joint return. It does not follow that in the absence of both spouses' signatures on a joint return, a valid tax return has been filed merely because the couple intended the form to be their joint return. Taxpayers may not circumvent the signature requirement simply by attempting to elect to file a joint return.

Accordingly, petitioner and Mrs. Olpin's intent to file a joint tax return has no bearing on whether they actually filed a valid return.

As a matter of law, we find that petitioner did not file a valid 1995 Federal income tax return and must compute his tax on the basis of a married individual filing separately. Respondent thus is entitled to a grant of summary judgment.

We have carefully considered all arguments made by petitioner and find them either irrelevant or without merit to the extent they are not specifically addressed herein.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.